Argued and submitted November 21, 1988, judgment modified; otherwise affirmed
April 26, 1989

RODWAY et al,
*Plaintiffs,*

*v.*

ARROW LIGHT TRUCK PARTS, INC., et al,
*Defendants,*

REMINGTON,
*Respondent,*

*v.*

CODY,
*Appellant.*

(A8611-06737; CA A47704)

772 P2d 1349

Fred A. Granata, Portland, argued the case and filed the brief for appellant.

Steven C. Johnson, argued the cause for respondent. On the brief was Donald K. Robertson and Robertson & Johnson, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Third-party defendant Cody appeals a judgment based on the trial court's interpretation of an indemnity agreement.

On May 10, 1983, defendants Edgar Remington (Edgar) and Gregory Remington (Gregory) signed a lease between plaintiffs, as lessors, and defendants Arrow Light Truck Parts, Inc. (Arrow), Edgar and Gregory for premises to be used for Arrow's business. As of that date, the Articles of Incorporation for Arrow had been filed, but there had been no election of officers and directors, and no shares had been issued. Edgar's signature on the lease was followed by the word "President." There was no title after Gregory's signature. Edgar testified that, although he wrote "President" after his signature, at the time of signing the lease there actually were no officers, only an intention by both of the Remingtons and Cody to become shareholders, officers and directors of Arrow, which they had done by the time the business began operations on June 1, 1983.

In the spring or early summer of 1984, Gregory was removed from his positions as director and officer of Arrow, after which he was no longer involved with the corporation, except as a shareholder. He testified that he sold his shares to Cody at a very low price on December 21, 1984,[1] in order to be absolved of any personal liability that he had undertaken for the corporation. He testified that he told Cody that he "wanted to be washed of it, and not be liable for anything" and that he asked the corporation's attorney to draft an agreement with an indemnity clause that would relieve him of "all liabilities as far as any debts or lease or anything." Cody testified that he did not recall any discussion of the indemnity clause, which follows:

> "It is further expressly agreed that Cody, as further consideration for the transfer of said shares to Cody, shall indemnify and hold harmless [Gregory] Remington from any or all damage, expense, lien, claim, demand, taxes, or action, for

---

[1] Gregory originally paid $15,000 in May or June of 1983 for one-third of the corporation's shares. He sold them to Cody in December, 1984, for $1,500, one-tenth of the original value. The following year Cody sold his two-thirds of the corporation's shares to Edgar for $33,000, making Gregory's one-third interest have a value of $16,500, or eleven times what Cody paid Gregory.

which [Gregory] Remington may be found personally liable due to his status or activity as officer, director, or shareholder of Arrow Light Truck Parts, Inc., at any time from the date of formation of the corporation to the date of this agreement."

Beginning in December, 1984, the lessees failed to pay the rent and eventually accrued a liability of $20,000. Plaintiffs brought an action against defendants, including Gregory, for the unpaid rent and for other alleged damages to the premises. Gregory brought a third-party complaint against Cody, asking Cody to pay any damages awarded plaintiffs in the primary action against Gregory and to reimburse his litigation expenses, including attorney fees.

The trial court first heard plaintiffs' case. It found for plaintiffs but dismissed all claims for damages, except the rent and the value of a radiant heater. It then heard Gregory's third-party complaint and gave him a judgment for indemnity and defense expenses.

■ Cody argues that the indemnity provision did not cover Gregory's signing the lease in that he did not incur liability "due to his status or activity as an officer, director or shareholder." He first argues that Gregory incurred personal liability because he was a party to the lease, not because he was a guarantor of the corporate debt. Cody did not present this argument below, and we will not consider it.

■ Cody next argues that the corporation was not formed until after Gregory signed the lease, so that his obligation is personal. Gregory clearly had not formally become an officer, director or shareholder when he signed, although the corporation existed, because the Articles of Incorporation had been filed.[2] ORS 57.316; ORS 57.321.

Evidence of the circumstances under which an agreement is made may be used in construing the meaning attributed by the parties to the words used in the instrument. ORS 42.220. When the stock sales agreement was signed,

---

[2] Edgar testified that the Articles had been "filed." Under the incorporation statutes in effect at the time, if submitted Articles conformed to the law, the corporation commissioner filed the original and returned a Certificate of Incorporation and a copy of the Articles marked "filed." ORS 57.316(1). The corporate existence began on issuance of the Certificate of Incorporation. ORS 57.321. Both statutes were repealed and replaced by the Model Corporations Act, Or Laws 1987, ch 52, codified in ORS ch 60.

Gregory was no longer an officer or director of the corporation, having held those positions for about a year, and he no longer had any interest, except as a minority shareholder. The focus of Gregory's argument is that he was severing all ties with Arrow by the sale and was willing to sell to Cody at a low price so that he no longer would have any liability for any act that he had undertaken to further the interests of the corporation, including during the formative stages.

A contract with unambiguous terms is generally construed according to the plain meaning of those terms. However, extrinsic evidence may be used to show that there are latent ambiguities. ORS 41.740. In this case, the plain meaning of the terms "officer" and "director" could be interpreted to exclude activities undertaken before Gregory's formal election, but the application of the indemnity clause to Gregory's act of signing the lease creates a latent or extrinsic ambiguity as to whether the indemnity clause covers agreements signed in furtherance of the existing corporation by persons about to become officers and directors of that corporation.

Cody does not deny that the lease that Gregory signed was for premises to be used for the corporation, that the premises were used for the corporation and that Gregory and Cody intended to, and shortly thereafter did, become officers, directors and shareholders of Arrow. Gregory's intention was that he be relieved of all liability associated with the corporation, including the lease, and he conveyed that intention to Cody and the corporate attorney who drafted the indemnity clause. His wish to be absolved of future liability for corporate obligations explains, in part, his willingness to accept a reduced price for his stock. Cody had no recollection of discussions as to the intent of the clause. The circumstances under which the indemnity clause was written support the implicit conclusion of the trial court that the purpose of the clause was to relieve Gregory of liability for acts taken during his short term as an officer of the company. There was evidence to support the trial court's finding that the indemnity clause covered Gregory's act of signing the lease.

Cody also argues that the rent payments do not fall under the indemnity clause, because the clause limits liability to the dates between the formation of the corporation and the date of the agreement, and most of the rent payments were

due after the stock sale agreement was signed. Under the agreement, liability is limited to damages for which Gregory may be found personally liable due to "his status or activity" between the two dates. Gregory's act of signing the lease occurred between the two dates and resulted in his liability for all rental payments under the lease.

Cody next argues that the trial court erred in including the value of the radiant heater as damages in indemnity, because there was no legal basis for including such damages in plaintiffs' case. The claim of error was not preserved.

■ ■    Cody also argues that the court erred in allowing Gregory to recover defense expenses as damages, because Gregory did not introduce evidence that the fees charged were reasonable and necessary. He testified he had incurred $2,500 in legal fees as a result of the lessors' action. After ruling that Cody was liable to indemnify Gregory, the court stated that it would entertain arguments for an award of attorney's fees at a conference the next morning. At the conference, Gregory's attorney stated that he was asking for reimbursement under the indemnity clause for the expenses of defending the claim and was not asking for court-awarded fees to the prevailing party. Cody's attorney contended that Gregory had not established the reasonableness of the attorney fees during the trial and that the evidence was now closed. The trial court then asked for reasonableness testimony, and Gregory's attorney offered none. Nonetheless, the court awarded $1,500.

An indemnitor is liable for any *reasonable* expenses incurred by the indemnitee in defending against a claim for which the indemnitee is entitled to indemnification. *St. Paul Fire & Marine v. Crosetti Bros.*, 256 Or 576, 579, 475 P2d 69 (1970). In the absence of evidence that the expenses incurred were reasonable, the court should not have awarded them.

Judgment modified to vacate award of $1,500 for defense expenses; otherwise affirmed.