Argued and submitted October 3, reversed and remanded in part; otherwise affirmed
December 14, 1994

MITTLEMAN PROPERTIES,
a general partnership,
*Appellant,*

*v.*

The BANK OF CALIFORNIA,
National Association,
a national banking association,
*Respondent,*

*and*

BCT PARTNERSHIP,
a general partnership,
*Defendant.*

(9211-07802; CA A81598)

886 P2d 1061

Robert D. Bulkley, Jr., argued the cause for appellant. With him on the briefs were David B. Markowitz, Lisa A. Kaner and Markowitz, Herbold, Glade & Mehlhaf, P.C.

Lori Irish Bauman argued the cause for respondent. With her on the brief were Steven K. Blackhurst and Ater Wynne Hewitt Dodson & Skerritt.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

EDMONDS, J.

## EDMONDS, J.

Plaintiff brought this action to require defendant The Bank of California National Association to remove asbestos from the building that defendant leases from plaintiff. Plaintiff appeals from a summary judgment.[1] ORCP 47. We reverse.

Summary judgment is proper when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Seeborg v. General Motors Corporation*, 284 Or 695, 699, 588 P2d 1100 (1978). On review of the summary judgment, we review the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Uihlein v. Albertson's, Inc.*, 282 Or 631, 634, 580 P2d 1014 (1978).

The following facts are uncontroverted. In 1971, defendant built what is commonly known as The Bank of California Building in downtown Portland. At the time of construction, the steel structure of the building, including the frame, ceiling and walls, was coated with asbestos, which was a conventional practice in constructing office buildings at that time. Defendant sold the building to plaintiff in 1972 and leased it back. As a part of that transaction, plaintiff and defendant entered into a lease for a term of 29 years with options to renew. The lease requires defendant to pay all expenses, including taxes, utilities, insurance, maintenance and repairs. Defendant occupies several floors of the building and sublets the remainder of the building.

Beginning in 1987 and through early 1989, defendant removed asbestos from slightly less than half of the building. Thereafter, it notified plaintiff that it was suspending the removal of the asbestos indefinitely. In this action, plaintiff seeks to compel defendant to remove the remainder of the asbestos, and it requests other related relief.

Plaintiff's first claim for relief is based on allegations that defendant breached its obligation under the lease to remove the asbestos. In its complaint, plaintiff alleges that

---

[1] Under ORCP 67B, all claims against BCT Partnership have been dismissed, and it is not a party to this appeal. Also, under ORCP 67B, plaintiff's first, third, fifth and sixth claims were dismissed with prejudice. Plaintiff appeals from the judgment on those claims.

the asbestos that has not yet deteriorated will probably do so in the future and that defendant has a duty under the lease to remove the asbestos before it deteriorates. Plaintiff contends that even if the asbestos does not constitute an existing hazard, defendant is obligated to remove it before it becomes a hazard. Plaintiff also alleges that the lease obligates defendant to protect plaintiff from the financial impact of the asbestos on the value of the building.

Defendant maintains that the lease obligates it to remove the asbestos only in the event that the asbestos becomes dangerous or in a state of disrepair, and that because the asbestos is not dangerous, it has no obligation to take further action. Defendant further contends that the lease does not obligate it to address the financial impact of the asbestos on the value of the building. Plaintiff counters that the lease is ambiguous as to both issues and, when properly construed in accordance with the parties' intentions, it requires defendant to complete the removal of the asbestos at this time.

The lease says, in part:

"Subject to the provisions of paragraph 11 [concerning insurable harm to the building], [defendant] covenants, at [defendant's] sole cost and expense, to take good care of the demised premises and to keep the same in good order and condition and to make promptly all necessary repairs.

"[Defendant] covenants not to do or suffer any waste or damage to the demised premises * * *.

"[Defendant] covenants that upon termination of this Lease for any reason whatsoever [defendant] will surrender to [plaintiff] the entire demised premises, together with all improvements, changes, alterations and replacements thereto, in good order and condition except for reasonable wear, use and tear, and loss or damage caused by casualty not covered by insurance."

Whether the lease is ambiguous is a question of law, as is its interpretation. *Timberline Equipment v. St. Paul Fire & Marine Ins.*, 281 Or 639, 643, 576 P2d 1244 (1978). An agreement is ambiguous "if it has no definite significance or it is capable of more than one sensible and reasonable interpretation." *Deerfield Commodities v. Nerco, Inc.*, 72 Or App 305, 317, 696 P2d 1096, *rev den* 299 Or 314 (1985). In the

absence of any claim of a latent ambiguity, we look to the four corners of the document to determine whether it is ambiguous. *See Edwards v. Times Mirror Company*, 102 Or App 440, 445, 795 P2d 564 (1990); *see also Rodway v. Arrow Light Truck Parts*, 96 Or App 232, 772 P2d 1349 (1989).

■ The lease requires defendant to keep the premises in "good order and condition and to promptly make all necessary repairs." Moreover, the lease obligates defendant not to allow any "waste or damage" to the premises, and on the completion of the term of the lease, to surrender the premises "in good order and condition except for reasonable wear, use and tear * * *." On their face, those provisions require defendant to take action only when the premises are in a state of disrepair. We conclude that the lease is not ambiguous regarding when defendant has an obligation to make repairs. The lease unambiguously requires defendant to make repairs only when they are needed. Nothing in the lease requires defendant to remove asbestos that is not a current health hazard or in a state of disrepair, nor does it require defendant to act if there is a financial impact on the value of the building, but repair is not required.

■ Also, plaintiff argues that a factual dispute exists as to whether the condition of the asbestos constitutes a present health hazard, which the parties agree would obligate defendant to address the hazard under the terms of the lease. Defendant contends that plaintiff does not allege any current health hazard in its complaint, but rather alleges only a potential hazard and that plaintiff cannot avoid summary judgment by creating a factual dispute on an issue outside of the scope of the pleadings. In *Federal Savings and Loan Ins. Corp. v. Johnson*, 97 Or App 250, 254 n 4, 776 P2d 24 (1989), we said, "if there is evidence in the summary judgment record that would justify amending a pleading, we will treat the complaint as if it had been amended." *See Hussey v. Huntsinger*, 72 Or App 565, 569, 696 P2d 580 (1985). In that light, we turn to the evidentiary record in the summary judgment proceeding.

Both parties presented evidence on the issue of whether the asbestos was in a state of disrepair. Plaintiff submitted a letter written by defendant's building manager in which he said, in part:

"Under no circumstances will any person disturb the asbestos containing fire-proofing monocoat during construction of The Bank of California tower.

"The sprayed fire-proofing is located on the structure's ceiling and perimeter walls. Since the asbestos containing material is friable, some material has fallen on top of the ceiling tile, so the suspended ceiling is to be considered contaminated and therefore cannot be disturbed.

"It is essential that all subcontractors' employees are told this information before entering the work site."

However, an affidavit from the executive director of a company that performs asbestos monitoring for commercial and industrial buildings asserts,

"in cooperation with [defendant] we developed an Operation and Maintenance Program for the Bank of California building * * *.

"3.   Pursuant to this Operation and Maintenance Program, monitoring is conducted on a regular basis. Monitoring consists of conducting air quality tests for asbestos fibers throughout the building.

"4.   Air quality sampling confirmed that these levels are comparable to asbestos fiber levels found outdoors in an urban area, such as downtown Portland. There is no evidence that such low levels present a measurable health hazard."

Also, based on deposition testimony, an attorney for defendant argued:

"The asbestos in the Bank of California building is not deteriorating, nor is it causing a health hazard."

In response to that argument, plaintiff's attorney filed an affidavit that said:

"Plaintiff has retained an expert who is available and willing to testify to admissible facts and opinions creating a question of fact [that] will be deemed sufficient to controvert the allegations of the Bank * * * and consequently form an adequate basis for the court to deny the Bank's motion to the extent it relies on those allegations."[2]

---

[2] ORCP 47E provides, in part:

"If a party, in opposing a motion for summary judgment, is required to provide the opinion of an expert to establish a genuine issue of material fact, an affidavit

We hold that the evidence, when considered as a whole, creates a genuine issue of material fact as to whether the asbestos presently is in a state of disrepair, and that issue of fact precludes summary judgment under ORCP 47. The trial court erred in granting summary judgment on the first claim.

■ The trial court also granted summary judgment as to plaintiff's third claim. In substance, plaintiff alleges that, after several years, it was discovered that the presence of asbestos in a building could constitute a health hazard to those persons who worked there, and that, subsequent to its appeal of a property tax evaluation, defendant entered into an agreement with Multnomah County to remove the asbestos in exchange for reduced property taxes. Plaintiff asserts that as long as defendant proceeded with its program to remove the asbestos, plaintiff made distributions to its partners from the lease payments made to it by defendant. It says:

> "Had the Bank demonstrated either that it did not intend to proceed with its program to remove the asbestos or that plaintiff had any responsibility to remove the asbestos or otherwise make repairs which would neutralize any potential adverse affects caused by the presence of asbestos, plaintiff would have established reserves and would have not distributed the payments made from the Bank to the partners of plaintiff.

> "* * * * *

> "As a result of the consent provided by the plaintiff, the assessed value of the property was reduced in excess of $10 million. Had the Bank indicated that it did not intend to go forward with the program to remove the asbestos, plaintiff would not have consented to the appeal of the property tax * * * based on the Bank's plan to remove the asbestos from the property unless and until the bank agreed to complete the plan at its sole expense."

---

of the party's attorney stating that an unnamed qualified expert has been retained who is available and willing to testify to admissible facts or opinions creating a question of fact, will be deemed sufficient to controvert the allegations of the moving party and an adequate basis for the court to deny the motion. The affidavit shall be made in good faith based on admissible facts or opinions obtained from a qualified expert who has actually been retained by the attorney who is available and willing to testify and who has actually rendered an opinion or provided facts which, if revealed by affidavit, would be a sufficient basis for denying the motion for summary judgment."

Defendant does not challenge the sufficiency of plaintiff's counsel's affidavit.

It further argues:

> "[Plaintiff] relied on the Bank's promise by joining in the appeal of the tax assessment which it was not legally bound to do if the bank did not act in good faith and by failing to accumulate reserves to pay the balloon payment that will soon be due. Without those reserves, it will be difficult or impossible to refinance the property in order to make that payment."

Based on these arguments, plaintiff contends that defendant is estopped from asserting that the lease does not obligate it to remove the remaining asbestos or to otherwise make repairs that would neutralize any potentially adverse effects caused by the presence of the asbestos.

Plaintiff says that the theory of its third claim is "estoppel." "Estoppel is not in itself the basis for a claim, but it may be a method of proving the facts necessary to establish the claim that the plaintiff does make." *Gilman v. Emel*, 89 Or App 153, 156-57, 747 P2d 390 (1987). We have concluded previously that the terms of the lease are unambiguous and require defendant to make repairs only when needed. Arguably, an estoppel could give rise to an implied agreement modifying the terms of the lease between plaintiff and defendant about the removal of the asbestos. In the light of plaintiff's allegations and arguments, we understand plaintiff to contend that there is an implied agreement between it and defendant that requires defendant to remove the asbestos, an agreement which defendant is estopped to deny. The elements of equitable estoppel are: (1) a false representation, (2) made with knowledge of the facts, (3) when the other party is ignorant of the truth, (4) made with the intention that the other party rely on the representation, and (5) that the other party is induced to act upon it to its detriment. *Donahoe v. Eugene Planing Mill*, 252 Or 543, 545, 450 P2d 762 (1969).

One problem with this claim is that plaintiff does not allege that defendant promised plaintiff that it would remove all of the asbestos, but rather that defendant promised the county that it would remove all of the asbestos. Even if plaintiff relied on defendant's representations to the county, an estoppel as part of a contractual relationship between plaintiff and defendant requires proof that defendant made

the representations with the intention that *plaintiff* rely on them. There is no evidence that defendant knew that plaintiff would rely on the alleged representations to the county by disbursing partnership profits that plaintiff claims would have otherwise been held in reserve to make repairs or to pay off its upcoming balloon payment. Because plaintiff did not offer evidence on all of the elements of an estoppel, the trial court did not err regarding the third claim.[3]

■  Next, plaintiff assigns as error the summary judgment on plaintiff's fifth claim for relief. Plaintiff characterizes that claim as one for "breach of contract/third party beneficiary." According to plaintiff's complaint, defendant and Multnomah County agreed to settle defendant's tax appeal based on defendant's promise to complete the program to remove the asbestos. Plaintiff alleges that it is a third-party beneficiary of that agreement. However, there is no evidence that defendant or Multnomah County intended to benefit plaintiff through their purported agreement. Under the provisions of the lease, defendant is responsible for all property tax obligations. In *Aetna Casualty & Surety Co. v. OHSU*, 310 Or 61, 65, 793 P2d 320 (1990), the court said:

"Absent an intention to confer a contract right upon a third party who has paid no value, the contract will not be interpreted to promise performance to the third-party stranger to

---

[3] Plaintiff's estoppel theory also fails, because equitable estoppel protects only those who materially change their position in reliance upon another's acts or representations. *Bash v. Fir Grove Cemeteries, Co.*, 282 Or 677, 687, 581 P2d 75 (1978). Plaintiff already was legally obligated to consent to defendant's property tax appeal. The parties' lease provides, in part:

"6. [Defendant], in addition to the net monthly basic rent provided for herein, shall pay all ad valorem real estate taxes and assessments upon the demised premises which are levied after the commencement of the primary term of this Lease and during the primary term of this Lease or any extension thereof. * * * [Defendant] may contest in good faith all such taxes and assessments against said demised premises as [defendant] reasonably may deem unlawful, and for such purpose [defendant] may, at [defendant's] own expense, prosecute such appeals, suits, actions or other proceedings in [defendant's] own name or in the name of [plaintiff], or both, as [defendant] may deem appropriate * * *. [Plaintiff] shall, upon request of [defendant], cooperate with [defendant] with respect to making, filing and prosecuting any such appeals, suits, actions or other proceedings and, if required to make the same effective, join therein."

Plaintiff's joining in the tax appeal, which it was legally obligated to do under the terms of the lease, does not constitute a material change of position in reliance on defendant's representations.

the contract even though the stranger may incidentally benefit from the contract."

In the absence of such evidence, the trial court did not err in granting summary judgment to defendant on this claim.

■ Finally, plaintiff assigns error to the trial court's granting of summary judgment on its sixth claim for relief. In that claim, plaintiff alleges:

> "As an alternative to plaintiff's fifth claim for relief, plaintiff is entitled on an equitable basis to enforce the Bank's promise to remove the asbestos. Based on the Bank's promise to remove the asbestos, the Assessor reduced the assessed value of the property. The Bank knew that the Assessor reduced the assessed value of the property because of the Bank's promise to remove the asbestos. Plaintiff reasonably relied on the promise made by the Bank to remove the asbestos * * *. Injustice can only be avoided by the enforcement of the Bank's promise to remove the asbestos."

Plaintiff characterizes this claim as being based on a "third party beneficiary promissory estoppel" theory. It says:

> "Even if [plaintiff] was not the direct recipient of the Bank's promise to complete the program to remove the asbestos, it was a third party beneficiary of the promise to the county and the Department. [Plaintiff's] reliance on that promise, to its detriment, creates a promissory estoppel that entitles [plaintiff] to enforce the promise."

This claim suffers from the same problems as the third and fifth claims. In *Natkin & Co. v. H.D. Fowler Co.*, 128 Or App 311, 314, 876 P2d 319 (1994), we said:

> "Promissory estoppel is not an independent cause of action. It is a substitute for consideration, and provides a basis for enforcing a promise as a contract despite a lack of consideration, when the promisee has relied on a promise to his or her detriment."

Moreover, as we have already said, there is no evidence that either defendant or the county intended to benefit plaintiff by their agreement.

Nonetheless, plaintiff relies on *Restatement (Second) Contracts* § 90, *comment c* (1979), which says:

"If a promise is made to one party for the benefit of another, it is often foreseeable that the beneficiary will rely on the promise. Enforcement of the promise in such cases rests on the same basis and depends on the same factors as in cases of reliance by the promisee. Justifiable reliance by third persons who are not beneficiaries is less likely, but may sometimes reinforce the claim of the promisee or beneficiary."

Thus, the predicates to plaintiff's claim are that there exists a contractual relationship between the county and defendant for plaintiff's benefit, and that it was foreseeable that plaintiff would rely on that agreement. Even if plaintiff was an intended beneficiary of the alleged agreement between defendant and the county, we find no evidence in the record to suggest that defendant should have foreseen that plaintiff would not create reserves in reliance on defendant's promise to the county. *See Bixler v. First National Bank*, 49 Or App 195, 200, 619 P2d 895 (1980). We conclude that the trial court did not err in granting summary judgment on the sixth claim for relief.

In the light of our disposition of these assignments, plaintiff's other assignments of error and arguments do not require discussion.

Judgment on claim for breach of lease reversed and remanded; otherwise affirmed.