Argued and submitted August 24, 1995, reversed and remanded January 24, 1996

# CHARLES M. KEENAN,
*Appellant,*

*v.*

# Manfred (Fred) MAASS,
# Superintendent,
# *Respondent.*

# (94-C-11097; CA A84950)

911 P2d 331

David W. Knofler argued the cause for appellant. With him on the brief was Multnomah Defenders, Inc.

Kristin N. Preston, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

De MUNIZ, J.

**De MUNIZ, J.**

Plaintiff appeals a judgment dismissing a writ of *habeas corpus*. ORS 34.680(1). We reverse.

Plaintiff, an inmate at Oregon State Penitentiary (OSP), petitioned for a writ of *habeas corpus*, alleging that he suffers from severe headaches, jaw aches and migraines stemming from Temporomandibular Joint Dysfunction (TMJ), and that he has a severe overbite that causes his teeth to grind and chip off. He claimed that ineffective treatment of his symptoms and refusal to authorize corrective surgery was a denial of constitutionally adequate dental care.

The trial court issued a writ of *habeas corpus*, ORS 34.310 *et seq*, and defendant filed a return stating that plaintiff's conditions of confinement were lawful and constitutional. ORS 34.540. Subsequently, defendant, superintendent of OSP, filed a motion to dismiss the writ on the grounds that plaintiff failed to state or establish a claim for *habeas corpus* relief. ORS 34.680(1). In support of his motion and memorandum, defendant submitted plaintiff's dental records and the affidavit of Dr. Gorham, the chief dental officer of OSP. Gorham's affidavit detailed the dental treatment plaintiff had received, and asserted that plaintiff "is receiving the dental care that is appropriate for his condition and which meets community standards."

At the ensuing hearing on the motion to dismiss, counsel for plaintiff orally moved that plaintiff's initial petition be made the replication, against which the state's motion to dismiss be applied. ORS 34.670. Plaintiff's counsel then submitted plaintiff's sworn statement, attached to the initial petition, which, defendant stipulated, converted the petition into an affidavit.[1] Defendant asserted that plaintiff's affidavit did not controvert Gorham's averments that plaintiff had received appropriate dental care, and, thus, on the central

---

[1] For unknown reasons, the affidavit was not part of the trial record submitted to us. The parties agree that it states:

"I, Charles M. Keenan, being first duly sworn on oath, do depose and say that the events detailed in the attached PETITION FOR WRIT OF HABEAS CORPUS, is an accurate accounting of my situation. The contents are all true."

Because the parties agree as to the affidavit's substance, and the record reflects that the trial court accepted that affidavit and treated plaintiff's petition as an affidavit for purposes of the motion to dismiss, we shall do the same.

issue of the adequacy of treatment, there was no issue of material fact. The trial court agreed and granted defendant's motion to dismiss.

Plaintiff assigns error to the dismissal of the writ of *habeas corpus* on the grounds that his affidavit raised genuine issues of material fact as to the propriety of *habeas corpus* relief. Defendant reiterates his arguments that dismissal under ORS 34.680(1) was proper because there was no issue of material fact as to whether defendant's treatment of plaintiff was constitutionally adequate, and plaintiff did not establish the need for immediate judicial attention.

■ ORS 34.310 *et seq* defines the procedures for issuance and dismissal of writs of *habeas corpus*. Those statutes were substantially revised in 1991, including an amendment that permits a defendant, after a writ issues, to submit evidence supporting a motion to dismiss. ORS 34.680(1) provides, in part:

> "The defendant may, at any time after the writ issues, move to dismiss the writ on the grounds that the pleadings, including the petition, the return, the replication, if any, *and any supporting evidence*, demonstrate that the plaintiff has failed to state *or establish* a claim for habeas corpus relief." (Emphasis supplied.)

Thus, a motion to dismiss under ORS 34.680(1) is, when supported by affidavits and related evidentiary materials, the functional equivalent of a motion for summary judgment. *McClintock v. Schiedler*, 123 Or App 334, 336 & n 2, 859 P2d 580 (1993).

■ Because ORS 34.680 sets forth a summary judgment-like procedure on submitted evidence, analogy to the rules of civil procedure is appropriate. *See Bedell v. Schiedler*, 307 Or 562, 565, 770 P2d 909 (1989). On review of a summary judgment, we view the record in the light most favorable to the party opposing the motion, drawing all reasonable inferences in his favor. *Seeborg v. General Motors Corporation*, 284 Or 695, 699, 588 P2d 1100 (1978); *Mittleman Properties v. Bank of California*, 131 Or App 666, 668, 886 P2d 1061 (1994).[2]

---

[2] Because plaintiff, by affidavit, converted his petition *cum* replication into an affidavit, this case does not present the situation addressed in *McClintock*, which

■　　To establish the propriety of *habeas corpus* relief based on constitutionally inadequate conditions of confinement, plaintiff must "[s]tate facts in support of a claim that the person is deprived of a constitutional right that requires immediate judicial attention and for which no other timely remedy is practicably available to the plaintiff." ORS 34.362(2). Where, as here, a plaintiff inmate asserts that medical or dental care is constitutionally inadequate as cruel and unusual punishment under Article I, section 16, of the Oregon Constitution[3] or under the Eighth Amendment to the United States Constitution,[4] those state and federal constitutional claims are assessed under different standards. *Billings v. Gates*, 133 Or App 236, 242, 890 P2d 995 (1995), *rev allowed* 321 Or 512 (1995). To prove that medical care is constitutionally inadequate under Article I, section 16, plaintiff must allege and prove that he has not been

> " 'afforded such medical care in the form of diagnosis and treatment as is reasonably available under the circumstances of [his] confinement and medical condition.' " *Billings*, 133 Or App at 241, quoting *Priest v. Cupp*, 24 Or App 429, 431, 545 P2d 917, *rev den* (1976).

The adequacy of medical treatment under Eighth Amendment standards is prescribed by *Estelle v. Gamble*, 429 US 97, 106, 97 S Ct 285, 50 L Ed 2d 251 (1976).

> "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."[5]

---

held that the replication, as the plaintiff's principal pleading, is not evidence sufficient to overcome a motion to dismiss for failure to establish a claim for *habeas corpus* relief. 123 Or App at 338.

[3] The Oregon Constitution, Article I, section 16, provides, in part:

"Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense."

Plaintiff's petition also alleged an entitlement to relief under Article I, sections 13 and 20, of the Oregon Constitution. However, on appeal, he does not invoke those provisions.

[4] The Eighth Amendment to the United States Constitution provides:

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

[5] Defendant in this case urges us to abandon the "reasonably available" standard we enunciated in *Priest* and to hold that *Estelle v. Gamble's* "deliberate indifference" test controls both the state and federal constitutional inquiries. In

We apply those standards, as appropriate, to plaintiff's claims for inadequate treatment of his overbite and for inadequate treatment of his TMJ condition.[6]

In moving to dismiss the petition, defendant submitted the affidavit of Gorham, the chief dental officer of OSP. That affidavit included the following averments pertaining to plaintiff's overbite claim:

"4. The dental records indicate that the patient has a history of dental-related problems. As a result, the patient has been seen by ODOC dental staff on a regular basis.

"5. On July 11, 1989 the patient first complained of his alleged overbite problem. On that date, he was examined by a dentist at Oregon State Correctional Institution (OSCI). The patient told the dentist that he had been told by an Army doctor that he had [an] overbite and that he wanted it fixed. The dentist's assessment was that the patient did indeed have a deep overbite. The dentist told the patient that orthodontia to correct an overbite is an elective procedure which is not performed by the Department of Corrections.

"6. The patient has been seen by ODOC dental staff personnel on fourteen occasions since July 11, 1989 for complaints relating to his teeth.

"7. To date, the patient has received treatment to correct incisal and occlusal effects caused by his overbite.

"* * * * *

"11. Health Services dental staff will continue to monitor the patient's dental condition and remain available to the patient through sick call and appointment. The patient is currently scheduled to have his dental problem re-evaluated. His appointment date is April 25, 1994.

"12. I am familiar with the standard of dental care in the community. My opinion is that this patient is receiving the dental care that is appropriate for his condition and which meets community standards."

_____

*Billings*, we rejected that invitation. The Oregon Supreme Court has accepted review in *Billings*, presumably to consider that question.

[6] We analyze plaintiff's claims regarding treatment for his overbite and TMJ separately. Some portions of plaintiff's converted petition, prepared before counsel was appointed, do not clearly distinguish between the two conditions, and we read those portions in the light most favorable to plaintiff.

Plaintiff's affidavit opposing dismissal includes the following statements regarding the diagnosis and consequences of his overbite:

"2) Plaintiff, while he was housed in the Intensive Management Unit (IMU), was seen by the dentist there, and was told that he has a severe overbite and that it would cause him problems until he got it fixed.

"3) Plaintiff, then went to the Oregon State Correctional Institution (OCSI), and requested to see the dentist there about getting a crown on one of his front teeth where he recently had a root canal done. The dentist there informed him that until he got his severe overbite repaired, that his teeth are going to continue to keep chipping off until there is nothing left. But that he would not repair it, that I had to pay for it and it would cost several thousand dollars to have this done.

"4) When the Plaintiff was transferred to the Eastern Oregon Correctional Institution (EOCI), he [saw] the dentist there about the same problem, and was eventually told the same thing, until he got his severe overbite repaired, his teeth would continue to break off.

"5) Again the Plaintiff went to the dentist office to try and get his problem fixed. The dentist informed him that they would not spend the money to fix this problem, because, it is a 'Looks' problem, and not a mandatory one, and that if he wanted to have it done, that he would have to have the appropriate money sent to his inmate account to pay for it.

"* * * * *

"9) The Plaintiff requested and was denied by Dr. Gorham [to] be sent out to the streets and see a specialist that deals with the type of problems that the Plaintiff is having. Dr. Gorham stated that there is no need to do this. When the Plaintiff ask[ed] why, because * * * the severe overbite on his teeth is causing him grave difficulty, Dr. Gorham stated that he could take care of it himself."

Defendant asserts that plaintiff's affidavit was insufficient to raise a genuine issue as to the propriety and sufficiency of the treatment of his overbite. Defendant asserts, particularly, that plaintiff failed to controvert Gorham's opinion that the treatment was appropriate and conformed to community standards.

■    We disagree. Plaintiff's affidavit recites, in paragraphs 3 and 4, that two different dentists at two different correctional facilities told him that until his severe overbite was "repaired" his teeth would continue to chip and break off. Those statements represent facts that "would be admissible in evidence" for purposes of ORCP 47 D[7] because, viewing the evidence most favorably to plaintiff as the nonmoving party, *Seeborg*, 284 Or at 699, it can be reasonably inferred that those dentists were retained by the Corrections Division, and, thus, their statements on matters within the scope of their employment were not hearsay. OEC 801(4)(b)(D).[8]

Those statements suggest that "repair," which can reasonably be read as meaning orthodontia, is not just one of a range of possible treatment options, but one that is far more efficacious — indeed, perhaps the only efficacious remedy for plaintiff's severe overbite. Thus, plaintiff's affidavit raises a genuine issue as to whether he has been afforded such care for his overbite as is "reasonably available" under the circumstances. *Priest*, 24 Or App at 431.[9]

Defendant argues, in the alternative, that plaintiff's overbite claim is inadequate to warrant *habeas* relief for a

---

[7] ORCP 47 D provides, in part:

"Except as provided by section E of this rule, supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. * * * When a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of that party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue as to any material fact for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against such party."

[8] OEC 801 provides, in part:

"(4)  A statement is not hearsay if:

"* * * * *

"(b)  The statement is offered against a party and is:

"* * * * *

"(D)  A statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship[.]"

[9] Because we conclude that plaintiff's affidavit raises material factual issues as to his overbite claim under the *Priest* standard, we need not address the federal "deliberate indifference" test.

second reason: Plaintiff failed to plead, much less offer proof, that his overbite condition "requires immediate judicial attention and for which no other timely remedy is practicably available." ORS 34.362(2). We disagree.

We have consistently held that a plaintiff must show "a serious, immediate, and ongoing health hazard" in order to establish the need for *habeas* relief. *Billings*, 133 Or App at 243 (plaintiff alleged that he was in such severe pain that he could not walk); *see Klinefelter v. Maass*, 111 Or App 608, 612, 826 P2d 1042 (1992) (plaintiff continued to suffer pain and numbness that remained undiagnosed despite claims, and some evidence, of a stroke or other serious injury). A plaintiff must allege or show facts demonstrating what his disease or illness is, and why it merits immediate attention. *McClaflin v. Wright*, 107 Or App 688, 691, 813 P2d 1098 (1991).

Plaintiff here has averred specific facts showing what his medical condition is — a severe overbite and continually chipping teeth. Although plaintiff's allegations do not rise to the level of those in *Moore v. Peterson*, 91 Or App 616, 618, 756 P2d 1261 (1988) (heart disease, diabetes, tuberculosis), or *Fox v. Zenon*, 106 Or App 37, 39, 806 P2d 166 (1991) (mental illness, severe depression prompting suicide attempts), the condition alleged here poses a more serious, immediate and ongoing health risk than those in *Jorgenson v. Schiedler*, 87 Or App 100, 102, 741 P2d 528 (1987) (swelling ankles) and *Bedell*, 307 Or at 568 (clogged sinuses, severe headaches, dry skin, sore throat), both of which warranted immediate judicial attention. Furthermore, as the party opposing summary judgment, plaintiff is entitled to "all reasonable inferences in [his] favor." *Mittleman*, 131 Or App at 668. Unlike *McClaflin*, where the plaintiff's general allegations of a "serious and disabling" mental illness were too conclusory to support more particular reasonable inferences, it is reasonable to assume here that broken teeth are painful, and that plaintiff's overbite may well lead to the destruction of his teeth. That is sufficient to demonstrate a "serious, immediate and ongoing health hazard." *Billings*, 133 Or App at 243.

Moreover, we are not persuaded that plaintiff has alternative remedies available. As both the Oregon Supreme

Court and this court have recognized, a plaintiff asserting a serious, immediate health risk should not be required "to endure additional weeks, months, or perhaps years" of unconstitutional conditions while he pursues a civil tort claim or injunctive relief. *Bedell*, 307 Or at 569; *see also Mueller v. Cupp*, 45 Or App 495, 499-500, 608 P2d 1203 (1980). Therefore, we conclude that plaintiff's overbite claim establishes a basis for *habeas corpus* relief.

The inquiry moves, then, to whether plaintiff's TMJ-related allegations warrant *habeas* relief. The material portions of Gorham's affidavit that pertain to plaintiff's alleged TMJ state:

"4.  The dental records indicate that the patient has a history of dental-related problems. As a result, the patient has been seen by ODOC dental staff on a regular basis. However, contrary to the patient's claims, it has not been determined that he suffers from TMJ.

"* * * * *

"8.  On December 2, 1993 impressions were taken to fit the patient with a night guard in order to prevent him from grinding his teeth. Grinding of teeth can cause TMJ symptoms. The patient received his night guard on December 22, 1993.

"9.  On February 28, 1994 I personally examined the patient for the purpose of determining whether he had TMJ related symptoms. My assessment was that of possible TMJ problems but the patient did not have his night guard with him at that time therefore I reappointed him so a more complete treatment plan could be initiated. This plan could consist of warm packs, anti-inflammatory medication and adjustment of his night guard. On that date, I prescribed 800 mg. Motrin once a day for 30 days.

"10.  If it is determined that the patient is experiencing TMJ symptoms, they will be treated conservatively as stated above. If conservative treatment methods * * * are not effective, other treatment options may include an outside referral and construction of an acrylic bite plate.

"11.  Health Services dental staff will continue to monitor the patient's dental condition and remain available to the patient through sick call and appointment. The patient is currently scheduled to have his dental problem re-evaluated. His appointment date is April 25, 1994.

"12. I am familiar with the standard of dental care in the community. My opinion is that this patient is receiving the dental care that is appropriate for his condition and which meets community standards."

The material portions of plaintiff's affidavit pertaining to TMJ state:

"1) Plaintiff is suffering from severe headaches, jaw aches, and also migraine headaches, due to his having a Jaw disease, called 'TMJ'.

"* * * * *

"4) * * * When the Plaintiff inquired about his headaches, the dentist told him that it is coming from his Jaw, and also from his grinding of his teeth when he sleeps at night. He further recommended that the Plaintiff get a 'Night Guard' to try and keep his teeth from grinding while he is sleeping, and he stated that he would schedule him for making one, but, before this could be scheduled, the Plaintiff was again transferred back to the OSCI.

"5) The Plaintiff tried to explain to the dentist how the grinding in his Jaw, and the popping it makes when he opens his mouth and/or tries to eat or drink something, and the dentist informed him that they still would not fix it, that he could get it done when he gets out on the streets. The Plaintiff then informed the dentist that he is doing a Natural Life sentence and is never getting out. The dentist still refuses to fix this.

"6) The Plaintiff was then transferred to the Oregon State Penitentiary (OSP), and he eventually went to see the dentist here about his problem. The Plaintiff was diagnosed as having 'TMJ' disease, and was made a 'Night Guard' for his grinding of his teeth[.] * * * The Plaintiff even went to the Dental sick call and spoke to the head dentist, Dr. Gorham, who scheduled him for an evaluation of his jaws. When he [had] seen the Plaintiff, he also said that he had 'TMJ' disease in his Jaws, and he wanted to reschedule him for another appointment to see how his Night Guard is fitting. The Plaintiff informed Dr. Gorham that the Night Guard is doing so-so, and that he is starting to have to wear it during the day also, because of the grinding of his teeth, and also it takes some of the pressure off of his jaws so they don't hurt so bad. The Plaintiff ask[ed] Dr. Gorham about fixing his severe overbite and also his 'TMJ' disease, and he was told that he would not do it, as he wanted to try other things first, (i.e., Motrin 600 mg daily for 1-month) and then he would see how

things are shaping up. The Plaintiff informed Dr. Gorham that he is currently on Motrin for a Medical Problem in his Elbow and it does not seem to help his Jaw any at all. But, Dr. Gorham put the Plaintiff on Motrin any way, and said that it should help him.

"7)   The Plaintiff is still suffering from his Jaw, and also the grinding of his teeth a lot throughout the day and night.

"8)   Dr. Gorham also told the Plaintiff that there is a way to fix his problem, and that is by doing surgery on his Jaw, but, that it would cost too much to have it done while he was in here, and that these other remedies that he is prescribing for him should be sufficient.

"9)   To this day, the Plaintiff still has problems with his Jaw, when he opens his mouth, he has to open it a certain way to keep his teeth from hitting and/or rubbing on one another, plus, his Jaw pops and/or grinds every time he opens his mouth for whatever reason."

█   Reading the affidavits most favorably to plaintiff, there is a material issue of fact as to whether Gorham or other dentists employed at OSP have diagnosed plaintiff as having a TMJ condition. However, as with the overbite claim, defendant asserts that, even assuming plaintiff has TMJ, there is no issue of material fact as to the constitutional adequacy of the treatment of that condition. Defendant asserts, particularly, that Gorham's opinion, set out above in paragraph 12 of his affidavit, that the treatment provided is appropriate under community standards, is dispositive and that plaintiff's affidavit was insufficient to controvert that fact. We disagree.

Plaintiff's affidavit recites, at paragraph 8 set out above, that Gorham told him that "there is a way to fix this problem, and that is by doing surgery on his Jaw, but, that it would cost too much." Read most favorably to plaintiff, Gorham's statement is an admission that surgery would be an effective means of treating plaintiff's alleged TMJ. Moreover, plaintiff's affidavit states facts, *e.g.*, the continuation of TMJ-related symptoms, permitting a reasoned conclusion that the course of treatment Gorham prescribed has proven ineffective. Thus, plaintiff's affidavit goes beyond merely identifying an alternative mode of treatment; instead, read most favorably to plaintiff, it shows that the prescribed course of treatment has proven ineffective and that another

course of treatment, which defendant has refused to provide, would be effective. That is enough to preclude a summary adjudication of whether plaintiff has been deprived of medical treatment that is "reasonably available under the circumstances of his confinement." *Billings*, 133 Or App at 241.

■ Defendant argues, finally, that plaintiff's TMJ-associated symptoms are not a "serious, immediate, and ongoing health hazard" that "requires immediate judicial attention and for which no other timely remedy is practicably available." *Id.* at 243. We disagree.

Like plaintiff's overbite averments, his recitation of his TMJ symptoms — "severe headaches, jaw aches, and also migraine headaches," as well as popping and grinding in his jaw whenever he opens his mouth — describes a condition that is disabling in that it materially and immediately interferes with such basic life activities as eating and talking. Thus, there are material issues of fact pertaining to the TMJ claim, precluding the summary adjudication of that claim. The trial court erred in dismissing the TMJ treatment allegation of plaintiff's petition.[10]

Reversed and remanded.

---

[10] Because of our disposition under Oregon constitutional standards, we need not address the sufficiency of plaintiff's TMJ-related allegations under the federal "deliberate indifference" test.