Argued and submitted February 3, affirmed April 12, 2000

## Deborah ANDREWS,
*Appellant,*

*v.*

## R.W. HAYS COMPANY,
an Oregon corporation,
dba Bi-Mor Stations,
dba Bi-Mor Stations, Inc.,
an Oregon corporation,
and Eugene B. Hunt,
*Respondents.*

## (98-2173-L1; CA A106789)

998 P2d 774

Randall Bryson argued the cause for appellant. With him on the briefs were Michael Kellington and Kellington & Kellington.

John T. Kaempf argued the cause for respondents. With him on the brief was Bullivant Houser Bailey.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

HASELTON, J.

## HASELTON, J.

Plaintiff appeals, challenging the entry of summary judgment in favor of defendants, a property owner and a service station/convenience store operator, in a "trip-and-fall" case. We conclude that plaintiff's averments recounting hearsay descriptions of similar accidents at the same site were immaterial to summary judgment in that such testimony would not be "admissible in evidence" at trial. ORCP 47 D. We further conclude that the balance of the evidence, even when viewed most favorably to plaintiff, is legally insufficient to support imposition of premises liability against defendants. Accordingly, we affirm.

We describe the parties' evidence in detail below. In general, defendants R. W. Hays Company and Bi-Mor Stations, Inc., operate a combination service and convenience store in Medford on property that defendant Hunt owns. On July 8, 1996, plaintiff, a patron at the "Bi-Mor" store, sustained substantial injuries when she fell as she was leaving the store. Plaintiff fell on a 1-1/2"-2" "step-down" as she walked from the concrete walkway outside the store to the slightly lower asphalt parking lot. The accident occurred around mid-day, and the weather was dry.

In June 1998, plaintiff filed this action. Plaintiff's operative amended complaint alleged that defendants were negligent:

"(a)  In maintaining a dangerous condition on the defendants' premises, in that the step-down from the walkway to the asphalt was of insufficient depth or distance to be recognized as a step, and sufficiently deep to create the hazard of an unexpected drop.

"(b)  In maintaining the dangerous step-down from the walkway to the asphalt in violation of Uniform Building code 1006.3, which requires that a step-down be either sloping gradually to the pavement or must be a uniform height of 6 inches.

"(c)  In failing to properly warn invitees including the plaintiff that the step-down from the walkway to the asphalt was not of standard distance and presented a hazard."

Defendants moved for summary judgment. In support of that motion, defendants submitted excerpts of plaintiff's deposition testimony describing the accident, two photographs of the premises taken several months after the accident,[1] and the affidavit of Steven Hays, the vice-president and secretary of the two corporate defendants. That affidavit states that the premises satisfied all applicable building code provisions and appends as an exhibit a copy of a certificate of occupancy to that effect. The Hays affidavit further averred:

"Other than plaintiff's incident, defendants have no record of and are not aware of any other tripping or slipping incidents at that store.

"At all times, the sidewalk in front of the store has been made of light gray concrete. The parking lot * * * that abuts the sidewalk has at all times been made of black asphalt."

Plaintiff responded by relying on portions of her deposition testimony. In particular, she emphasized her testimony that, as she walked from the store to the parking lot, she saw no marking on the concrete; that she perceived no "difference in the asphalt to the concrete"; and that "it looked level." Plaintiff also submitted an affidavit that stated, in material part:

"3.  [T]he ledge from which I fell was unpainted at the time of my injury.

"4.  [T]he ledge from which I fell was not discernible by virtue of the contrasting colors of the pavement and the adjoining asphalt.

"5.  [S]hortly after the incident occurred, I was informed by Bi-Mor personnel that this type of fall incident had occurred in the past to other people.

"6.  [M]y husband only observed the ledge after I had fallen, to discern that it was uneven." (Emphasis added.)

---

[1] One photograph was taken on a rainy day in January 1997 from a perspective looking from the parking lot to the store. That photograph shows a painted yellow line on the edge of the step-down curb, which was not visible at the time of the accident but which was subsequently repainted.

The second photograph, taken from the perspective of going from the walkway to the parking lot, depicts the difference in color and surface texture between the concrete and the asphalt.

Defendants filed a reply that, in part, objected to any consideration of the "other similar accidents" averment of paragraph 5 of plaintiff's affidavit. Defendants asserted, particularly, that the affidavit failed to establish that the statements of unidentified "Bi-Mor personnel" either were not hearsay or fell within any hearsay exception and, thus, under ORCP 47 D, that material should be disregarded.[2]

The trial court, without elaboration, granted summary judgment for defendants.

■ On appeal, plaintiff contends that summary judgment was inappropriate because, when the record is viewed most favorably to her, the facts are legally sufficient to support the imposition of premises liability with respect to her first and third specifications of negligence.[3] The crux of plaintiff's argument is that

> "[w]here there was evidence in the record of prior similar falls at the step-down on a walkway outside defendants' store, and of lapsed efforts by defendants to warn invitees of the danger by painting the edge of the step with yellow paint, and of the difficulty of ascertaining the step-down, the trial court should not have [allowed summary judgment] in favor of defendants, at least on the allegation that the defendants were negligent in failing to warn invitees, such as plaintiff, of the step-down."

Before addressing the merits, we must first determine what material is properly considered in resolving that question. Bluntly: What evidence is, or isn't, included in the summary judgment "mix"? In particular, does plaintiff's proffered evidence of other similar accidents satisfy the requisites of ORCP 47 D?

---

[2] There is no indication in the record that, in response to defendants' objections, plaintiff sought to revise her affidavit or to obtain and submit deposition testimony from Bi-Mor employees.

[3] Plaintiff does not challenge the propriety of summary judgment against her second specification of negligence, based on the alleged building code violation. *See* 166 Or App at 496 (quoting specifications). Rather, plaintiff expressly concedes that issue. Thus, plaintiff's challenge pertains solely to the maintenance of an unreasonably dangerous condition and failure to warn of that condition.

ORCP 47 D provides, in part:

"Except as provided by section E of this rule [pertaining to expert testimony], supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Here, as before the trial court, defendants assert that plaintiff's recounting of alleged statements by unidentified Bi-Mor employees that there had been prior similar accidents does not comport with ORCP 47 D. *See generally Paulsen v. Continental Porsche Audi*, 49 Or App 793, 799 n 3, 620 P2d 1384 (1980) (in reviewing propriety of allowance of summary judgment, court will not consider inadmissible hearsay in affidavits opposing summary judgment); *cf. Citizens Valley Bank v. Mueller*, 63 Or App 152, 154, 662 P2d 792 (1983) (party who contends on appeal that hearsay in summary judgment affidavits should be disregarded must have raised and preserved that objection in trial court). In particular, defendants contend that those alleged statements must be disregarded because the affidavit fails to demonstrate either that the statements were not hearsay or that they fell within an exception to the hearsay rule. We agree. *See generally Dority v. Hiller*, 162 Or App 353, 358, 986 P2d 636 (1999) (under ORCP 47 D, trial court correctly sustained objection to consideration of hearsay in affidavit in opposition of summary judgment); *Paulsen*, 49 Or App at 799 n 3.

Plaintiff's recitations of the statements ascribed to "Bi-Mor personnel" would be admissible as substantive evidence only if those statements were not hearsay or fell within an exception to the hearsay rule. Plaintiff does not invoke any exception to the hearsay rule. Rather, she argues only that the purported statements were not hearsay because they constituted admissions of an agent of a party opponent within the meaning of OEC 801(4)(b)(D). Under that provision a statement is not hearsay if:

"The statement is offered against a party and is:

"* * * * *

"(D)   A statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship[.]"[4]

*See generally* Laird C. Kirkpatrick, *Oregon Evidence*, 491 (3d ed 1996 ) ("Under this rule admissions by an agent may be received against the principal even though the agent was not authorized to make the statement, provided that (1) the statement concerned a matter within the scope of the agency or employment and (2) the statement was made during the existence of the relationship.").

■       Defendants contend that plaintiff's affidavit fails to establish the foundational requisites for admission under that exception. Most simply, defendants argue, it is impossible to determine whether a statement "concern[ed] a matter" within the declarant's scope of employment without knowing who the declarant was or, at least, the nature of his or her job:

"Plaintiff has not submitted any evidence that [the alleged statements] * * * concerned a matter within the scope of [the declarants' employment]. Indeed, plaintiff does not even identify the job title or function of the unidentified 'Bi-Mor personnel.' "

Defendants are correct. Proof of a declarant's job title or responsibilities is essential to establishing admissibility under OEC 801(4)(b)(D). Although no Oregon reported decision directly addresses this issue,[5] opinions from other

---

[1] Plaintiff does not contend that the statements fall within OEC 801(4)(b)(C) ("[a] statement by a person authorized by the party to make a statement concerning the subject"). As amplified in the textual discussion that follows, plaintiff's affidavit does not describe who made the statements, much less purport to describe that person's (or those persons') authorization.

[5] Plaintiff invokes *Keenan v. Maass*, 138 Or App 576, 911 P2d 331 (1992), *rem'd on other grounds* 324 Or 230, 923 P2d 1200 (1996), for the proposition that we can imply agency for purposes of admissibility of hearsay in affidavits submitted in opposition to summary judgment. *Keenan*, a habeas corpus case, involved qualitatively different circumstances. There, the plaintiff inmate asserted that he had been denied adequate dental treatment, and the state moved to dismiss—"the functional equivalent of a motion for summary judgment." 138 Or App at 579. In response, the plaintiff submitted an affidavit in which he stated that he had been told by two different dentists at two different correctional facilities that, until his over-bite was repaired, his teeth could continue to chip and break off.

In reviewing the allowance of summary judgment, we held that those statements contradicted the defendant's affidavits as to the adequacy of the dental treatment that had been provided. *Id.* at 583. We concluded that those hearsay

jurisdictions are instructive and persuasive. *See, e.g., State v. Cornell*, 109 Or App 396, 400, 820 P2d 11 (1991), *aff'd* 314 Or 673, 842 P2d 394 (1992) (because OEC 801 is derived from Federal Rules of Evidence 801, "we may look to federal cases applying the federal rule as interpretive guides").

*Thomas v. Stone Container Corp.*, 922 F Supp 950 (SDNY 1996), is exemplary. There, the corporate defendant moved for summary judgment in an occupational personal injury case, and plaintiff, in opposing that motion, submitted an affidavit in which he stated that one of the defendant's employees had told him that the defendant lacked certain equipment. The affidavit did not identify the employee by name or job title. The court held that, under FRCP 56(e),[6] the federal analog to ORCP 47 D, the alleged statement must be disregarded:

> "Such a statement would be classic hearsay and therefore not appropriately considered on this motion. It would not be removed from that category by Fed. R. Evid. 801(d)(2)(B) or (C). As the speaker is unidentified, even by job function, there is no evidence that the alleged statement was made by a person authorized to make it or that it concerned a matter within the scope of the declarant's employment." 922 F Supp at 957 (citation omitted).

*Ruggiero v. Standard Management*, No. 95APE05-641, 1995 WL 771439 (Ohio App) ( December 19, 1995), is similar. There, the plaintiff brought a personal injury action against the defendants, including an athletic club, for a severe back injury he incurred after his foot "stuck" as he played basketball on a carpeted floor. Defendants moved for

---

statements were admissible as agent admissions because it could reasonably be inferred that dentists who examine and treat inmates at prisons were retained by the Corrections Division. There was no question whether, if the dentists were employees, their statements concerned a matter (dental treatment) within the scope of their employment.

This case presents the obverse situation: The question is not (as in *Keenan*) whether the declarants were defendants' employees, but whether their alleged statements concerned a matter within the scope of their employment.

[6] FRCP 56(e) provides, in part:

> "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

summary judgment. In opposing that motion, the plaintiff submitted affidavits from two acquaintances who had witnessed the accident. Those affidavits stated that, after the accident, two employees of the athletic club had commented that the installation of the carpeted floor had resulted in many more injuries from playing basketball. As in *Thomas*— and in this case—the affidavits did not name the declarants or describe the nature of their job. The defendants objected to those affidavits, and the trial court, after striking the affidavits, granted summary judgment.

In reviewing the allowance of summary judgment, the Ohio Court of Appeals held that the alleged employee statements were inadmissible under Ohio Civil Rule 56(E), which, like ORCP 47 D, requires that summary judgment affidavits set forth "such facts as would be admissible in evidence." In particular, the court concluded that the affidavits failed to establish admissibility under Ohio Evidence Rule 801(D)(2)(d), which is identical to OEC 801(4)(b)(D). *See also Blackburn v. United Parcel Service, Inc.*, 179 F3d 81, 97-98 (3d Cir 1999) (alleged admission by named employee of the defendant was not admissible under FRE 801(d)(2)(D) where declarant's "position is not identified * * * and there is no indication that the statement was made concerning a matter within the scope of [declarant's] agency or employment").

We thus conclude that plaintiff's proffered evidence of prior similar accidents is properly disregarded in determining the propriety of summary judgment. In particular, given the exclusion of that material, defendants' evidence, via Steven Hays' affidavit, that "defendants have no record and are not aware of any other tripping or slipping incident at [the] store" is uncontroverted.

■    We turn to the merits. *Woolston v. Wells*, 297 Or 548, 557-58, 687 P2d 144 (1984), generally describes the applicable principles of premise liability:

"In general, it is the duty of the possessor of land to make the premises reasonably safe for the invitee's visit. The possessor must exercise [due care] to discover conditions of the premises that create an unreasonable risk of harm to the invitee. The possessor must exercise that standard of care either to eliminate the condition creating that

risk or to warn any foreseeable invitee of the risk so as to enable the invitee to avoid the harm."

Thus, property owners and occupiers of business premises are "liable to invitees only for conditions that create an unreasonable risk of harm to the invitee." *Jensen v. Kacy's Markets, Inc.*, 91 Or App 285, 288, 754 P2d 624, *rev den* 306 or 413 (1988).

■ Our inquiry reduces to whether, viewing the record most favorably to plaintiff—and excluding plaintiff's evidence of other similar accidents—a reasonable trier of fact could impose premises liability. So viewed, the record discloses that: (1) Plaintiff tripped on a 1-1/2"-2" step-down from a concrete walkway to an asphalt parking lot. (2) The fall occurred around mid-day on a dry summer day. (3) Plaintiff did not discern the step-down and perceived the area as being level. (4) No prior tripping or slipping accidents had occurred at the premises. And (5), at the time of the accident, defendants provided no warning of the step-down. Those facts are legally insufficient to support premises liability against either the defendant property owner or the defendant store operators. *See Hamilton v. Union Oil Company et al*, 216 Or 354, 339 P2d 440 (1959).

In *Hamilton*, the plaintiff was injured when she fell because of a 3-1/2" step-down from a service station office to the station's garage floor. The surfaces of the office floor and garage floor were of the same color and appeared to be level. The area was poorly lit, and there was oil, grease, and other slippery substances on the floor. The plaintiff brought a personal injury action against both the station operator and the owner of the premises. After the trial court withdrew various specifications of negligence, including all allegations against the property owner, the jury returned a verdict in favor of the defendant service station operator on the remaining specifications. On appeal, the plaintiff contended, *inter alia*, that the court had erred in withdrawing all specifications against the property owner and certain specifications against the station operator.

The Supreme Court first considered, and affirmed, the judgment in favor of the property owner. The court emphasized that the owner's premises liability could be

based only on conditions existing at the time it leased the premises, 216 Or at 361, and concluded that those conditions—the 3-1/2" step-down and the similarity of floor color creating a "deceptively level appearance"—were legally insufficient to support liability:

> "[T]here is no evidence of the existence of a defective condition of the premises at the time [owner] sub-let them to the [operator]. Nothing out of the ordinary is shown about the construction of this service station. All that has been proven is that when the premises were inadequately lighted, the drop-off from the office floor to the garage floor might constitute a hazard to a person not aware of the condition. The defendant [owner] was not responsible for the inadequate lighting." *Id.*

In so holding, the court explicitly distinguished and explained *Farley v. Portland Gas & Coke Co.*, 203 Or 635, 280 P2d 384 (1955), which the plaintiff had invoked for the proposition that premises liability could arise where "the coloring or pattern of the floor- covering are the same on both floor levels, giving a 'deceptively level appearance.' " *Farley*, 203 Or at 655:

> "As a reading of the opinion in the *Farley* case will disclose, the reference here was to the case of *Simpson v. Doe*, 39 Wash 2d 934, 239 P2d 1051. The 'deceptively level appearance,' as the court expressed in that case, was attained not only by the coloring or pattern of the floor covering on both levels being the same or similar, but by insufficient lighting. * * * The case is not authority for sustaining liability as against the defendant [owner].
>
> "* * * * *
>
> "We hold that no liability is shown against [the owner] as a lessor of defective premises." *Hamilton*, 216 Or at 363.

The court then addressed whether the trial court had erred in withdrawing from the jury's consideration a specification that the station operator had been negligent "[i]n * * * operating and maintaining the service station with a floor of different elevations immediately adjacent to the doorway entrance where the coloring or pattern of the floor gave a deceptively level appearance."[7] *Id.* at 359. The court

---

[7] The trial court did submit to the jury specifications that the operator "was negligent in failing to light the area adequately, in allowing oil, grease, and other

concluded, for the same reasons that it had expressed with respect to the owner's nonliability, that the combination of those elements, without more, was legally insufficient to impose liability on the station operator.[8] *Id.* at 364.

*Hamilton* controls. Here, viewing the evidence most favorably to plaintiff, there was a step-down of 1-1/2"-2" from a walkway to a parking lot, which, because of an actual or perceived similarity of color, had a "deceptively level appearance." Nothing more. There is no suggestion of inadequate lighting—the accident occurred outside at mid-day in July. There is no suggestion that the surface was slippery—the day was dry. There is no (admissible) evidence of any prior similar accidents. In sum, there was no unreasonably dangerous condition—and no concomitant duty to warn.

The trial court correctly granted summary judgment.

Affirmed.

---

slippery substances to remain on the floor, in failing to mark the floor so as to give adequate notice of the step and of the recessed area, in failing to provide a safe place for customers and other persons including the plaintiff to walk, and in failing to warn the plaintiff of the dangerous condition." 216 Or at 363-64. The jury, in returning a defense verdict, necessarily rejected those allegations.

[8] The court noted that those elements *in combination with* "dim light and slippery substances" *could* give rise to an obligation to construct and maintain a "barrier about the recessed floor" or a duty to warn visitors of the danger. 216 Or at 364. However, as noted, the jury in *Hamilton* was instructed on specifications of failure to mark the floor and failure to warn, and rejected them. *See* 166 Or App at 504-05 n 7.