Argued and submitted December 13, 1982, reversed and remanded with
instructions April 13, 1983

## MASSEY,
*Appellant,*

*v.*

## COOS HEAD TIMBER COMPANY et al,
*Respondents,*

## SUN PACIFIC SHIPPING CORP.,
*Cross-Appellant,*

*v.*

## COOS HEAD TIMBER COMPANY,
*Cross-Respondent.*

(81-610; CA A23068)

661 P2d 1374

Raymond J. Conboy, Portland, argued the cause for appellant. With him on the briefs were Jan Thomas Baisch and Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Michael H. Long, Eugene, argued the cause for respondent Coos Head Timber Company. With him on the briefs was Flinn, Brown & Roseta, Eugene.

Erskine B. Wood, Portland, argued the cause for respondent Sun Pacific Shipping Corp. With him on the brief was Wood, Tatum, Mosser, Brooke & Holden, Portland.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

Plaintiff, a longshoreman, was injured when he fell while stepping off a gangway onto a dock. He sued the dock owner, Coos Head Timber Company (Coos Head),[1] and the ship owner, Sun Pacific Shipping Company (Sun Pacific). Sun Pacific cross-claimed against Coos Head for indemnity. The jury found plaintiff 50 percent negligent and each defendant 25 percent negligent and assessed plaintiff's total money damages at $20,500. On defendant's motions, the trial court entered judgment notwithstanding the verdict in favor of both defendants, and plaintiff appeals. We reverse.

At the time of the accident plaintiff was 62 years old and employed as a "hatch boss" for a stevedore company that had contracted to load Sun Pacific's vessel. He arrived at work at 8:00 a.m. on the day of the accident and used the gangway, which ran parallel with the ship's hull, to go aboard. At the bottom of the gangway was a wooden platform that served as the lowest step. Beneath the dock end of the gangway was a roller, which was supposed to allow the gangway to remain in contact with the dock when the ship moved. The roller ordinarily rested on the dock so that the platform was only six to eight inches above the surface of the dock.

The platform was in its usual position when plaintiff boarded the vessel. When he left the ship, however, the platform was between two and three feet above the dock surface. Plaintiff, who is five feet six and one-half inches tall, gripped the hand line of the gangway and swung off the gangway to his left, away from the ship. When he stepped down, his right foot landed on a baseball-size rock on the dock, causing him to fall and be injured.

The allegations of negligence considered by the jury were that Coos Head was negligent in storing lumber in an area where rocks would be picked up by its machinery when the lumber was moved, in failing to remove rocks from the face of the dock and in failing to inspect the dock for the presence of rocks. Plaintiff's evidence showed that Coos Head stored lumber on a gravelled lot near the dock

---

[1] Coos Head Timber Company is actually a long-term lessee of the dock.

and that, when lumber was moved to the dock for loading, rocks from the storage lot were also sometimes moved and became scattered over the dock.

There was also evidence from which a jury might reasonably infer that Coos Head was aware of the dangers to workers caused by the presence of rocks on the dock. Coos Head's manager testified that stacks of lumber were cleared of rocks before they were moved from the gravelled area to the dock, that it was the practice of the company to clean the dock prior to the arrival of a vessel, that he inspected the cleaning job that was performed prior to plaintiff's accident and that his inspection revealed "no rocks." The cleaning was done by a crew of at least three men, using a tractor with a sweeper attachment and picking up rocks by hand both before and after using the sweeper.

In *Dawson v. Payless for Drugs,* 248 Or 334, 433 P2d 1019 (1967), the Supreme Court adopted Section 343A of the Restatement (Second) of Torts as the standard of care that an occupier of land owes to business invitees, as to open and obvious dangers:[2]

> "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."

*Dawson* went on to state that the possessor's duty to take precautions against known or obvious dangers arises only when the condition is "unreasonably dangerous," 248 Or at 340, that is, when the "danger is such that it cannot be encountered with reasonable safety even if the danger is known and appreciated," 248 Or at 340, *quoting* 2 Harper and James, Law of Torts 1493, § 27.13 (1956). In *Dawson,* the Supreme Court held that an involuntary nonsuit was erroneously granted in an action for damages incurred when the plaintiff slipped on ice on the defendant's parking

---

[2] Although plaintiff testified that he looked down at the dock before he swung off the gangway and did not notice the rock that caused him to fall, both parties treat § 343A and *Dawson* as the applicable law. From that we assume that the parties agree that the danger was open and obvious, even if plaintiff did not actually see the rock.

lot. *Dawson* indicates that the question whether a condition is unreasonably dangerous is for the jury and held:

"[I]n the present case the jury could have reasonably found that (1) the probability of harm created by the icy condition of the parking lot was unreasonably great * * *." 248 Or at 341.

Here, the case was properly submitted to the jury in language taken from *Dawson*.

■   We do not read *Dawson* to say that a court should never withdraw the question from a jury, *see Hill v. Pacific Power & Light,* 273 Or 713, 543 P2d 3 (1975), but here, viewing the evidence in the light most favorable to plaintiff, we are unable to say as a matter of law that the presence of a baseball-size rock on a dock near the end of the gangway, while men are using the gangway during a loading operation, is not an unreasonably dangerous condition. Plaintiff's evidence was sufficient to present a jury question. That the dangerous condition was present where men were working distinguishes this case from those cited by Coos Head, most of which involve customers of commercial establishments. Moreover, the dangerous condition here was located in such a place, on a dock near the end of the gangway, that any person desiring to disembark from the gangway might reasonably be expected to encounter the condition despite the obviousness of the danger. Negligence of plaintiff in failing to avoid stepping on the rock was accounted for by the jury in finding him to be 50 percent negligent. The judgment in favor of Coos Head is reversed.

Plaintiff's case against Sun Pacific is governed by Federal maritime law. *See* 46 USC § 740 (1976). Before 1972, a shipowner was liable to an injured longshoreman for breach of warranty of seaworthiness without proof of fault on the part of the shipowner. In 1972, Congress amended the Longshoremen's and Harbor Worker's Compensation Act, changing the standard for shipowner liability. Pub. L. 92-576, § 18(a), 86 Stat. 1263 (1972). Plaintiff's action is under 33 USC § 905(b) (1976):

"In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person * * * may bring an action against such vessel * * *.

"* * * * *

"The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occured."

In *Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 451 US 156, 101 S Ct 1614, 68 L Ed 2d 1 (1981), the Supreme Court interpreted this change to mean that

"absent contract provision, positive law, or custom to the contrary * * * the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions *that develop within the confines of the cargo operations that are assigned to the stevedore.*" 451 US at 172. (Emphasis supplied.)

By way of dictum, the court went on to say that the shipowner *may* be liable, however, "if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, *under the active control of the vessel during the stevedoring operation.*" 451 US at 167. (Emphasis supplied).[3] The accident in *Scindia* was caused by a defective winch, part of the ship's gear, which was concededly under the control of the stevedore company at the time of the accident. Therefore, if Sun Pacific's gangway was under the control of the vessel during the loading operation, the primary rule of law set out in *Scindia* is not on point, and we would only be required to determine, under *Scindia's* dictum, if plaintiff submitted sufficient evidence to go to the jury on the question of whether Sun Pacific "failed to exercise due care."[4] *See Davis v. Partenreederei "M.S." Normannia*, 657

---

[3] The jury was instructed according to this standard.

[4] The Supreme Court stated that a shipowner could also be liable to an injured longshoreman for breach of its duty

"to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property, and to warning the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work." 451 US at 167.

The court also held that, even in the case of an obviously dangerous condition in the ship's equipment that is being used by the stevedore in its operations, the

F2d 1048 (9th Cir 1981); *Sarauw v. Oceanic Navigation Corp.*, 655 F2d 526 (3rd Cir 1981).

The record contains ample evidence to support a finding that Sun Pacific's gangway was under its control during the loading operation. Plaintiff's expert witness, a retired captain with 25 years of experience at sea, testified that it is the vessel's responsibility to maintain the gangway, which includes the posting of a gangway watch. Sun Pacific stipulated at trial that Rule 233 of the Pacific Coast Marine Safety Code was applicable. That rule, which was read to the jury as part of the instructions, states:

> "When a ship is lying at a pier or wharf, there shall be provided at all times a safe means of going to and from the ship consisting of a gangplank or other equally adequate and safe method."

Counsel for Sun Pacific agreed during trial that it is the ship's duty "to exercise reasonable care to provide a typical gangway."[5]

■    That being the case, we must determine if there was evidence to support a finding that Sun Pacific was negligent.[6] There was. As in plaintiff's case against Coos Head, we are unable to say that maintaining a gangway so that instead of its usual six to eight inch step there was a two to three foot step down to the dock was not negligent

---

shipowner has a duty to intervene and repair the condition if the stevedore's judgment in continuing to use the equipment was "obviously improvident," 451 US at 175, or when statutes, regulations or custom placed a continuing duty on the shipowner to repair defective ship's gear being used by the stevedore.

[5] Both *Davis v. Partenreederei M/S Normannia, supra,* and *Sarauw v. Oceanic Navigation Corp., supra,* were decided after *Scindia Steam Navigation Co., Ltd. v. De Los Santos, supra,* and refer to it. Both involved injuries incurred in connection with the use of gangways. In both, the gangways were found to be under the control of the vessel, even though in *Sarauw* the gangway used was actually supplied by the stevedore.

[6] On the general standard of care which a shipowner owes, the court in *Scindia* quoted from S. Rep No. 92-1125 (1972):

> "[The vessel's] liability was to be 'based on its own negligence' and could be proved only if it was shown 'to have acted or have failed to act in a negligent manner such as would render a land-based third party in non-maritime pursuits liable under similar circumstances.'" *Scindia Steam Navigation Co., Ltd. v. De Los Santos, supra,* 451 US at 165, n 13.

Justice Brennan, concurring, stated his view that "a shipowner has a general duty to exercise reasonable care under the circumstances," a view which he thought consistent with the majority opinion. 451 US at 179.

as a matter of law. The jury could also have found that Sun Pacific was negligent in failing to remove objects from the dock area at the base of the gangway. *See Davis v. Partenreederei, supra.* Sun Pacific attempts to lay all the blame for plaintiff's fall on the rock left by Coos Head, but the jury could reasonably have found that the high step was a contributing cause of plaintiff's accident. The judgment in favor of Sun Pacific is reversed.

The case is remanded in order that the judgment on the jury verdict can be reinstated. Because the trial court found no liability on the part of either defendant, it entered judgment against Sun Pacific in its cross-claim for indemnity against Coos Head. Because we reverse that finding, we also reverse the judgment on the cross-claim, from which Sun Pacific took a protective cross-appeal. Defendants agreed that the trial court would pass judgment on the cross-claim, and it is therefore remanded for a new determination.

Reversed and remanded with instructions to reinstate the judgment on the verdict and determine the cross-claim of Sun Pacific.