Argued and submitted September 8, reversed and remanded for a new trial
December 13, 2000

# Mable SHOUP,
*Respondent,*

*v.*

# WAL-MART STORES, INC.,
*Appellant.*

## (97C-14504; CA A106153)

15 P3d 588

Steven M. Lippold argued the cause and filed the briefs for appellant.

J. Michael Alexander argued the cause for respondent. With him on the brief was Swanson, Lathen, Alexander & McCann, P. C.

Before Haselton, Presiding Judge, and Wollheim and Brewer, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Defendant Wal-Mart appeals from an adverse judgment in a personal injury action. Defendant contends that: (1) the trial court erroneously submitted a deficient specification of negligence to the jury; and (2) because the jury rendered a general verdict, defendant is entitled to a new trial under the "we can't tell" rule of *Whinston v. Kaiser Foundation Hospital*, 309 Or 350, 357, 788 P2d 428 (1990). Plaintiff responds that the challenged specification, as refined and proved at trial, is sufficient, and that in all events, defendant, in objecting to a special verdict form that plaintiff's counsel proffered to the trial court, abdicated any future invocation of the "we can't tell" rule. We agree with defendant and, consequently, reverse and remand for a new trial.

Viewed most favorably to plaintiff as the prevailing party,[1] the record establishes the following material facts: Plaintiff Mable Shoup and her husband were regular customers of the Wal-Mart store in North Salem. On February 15, 1996, plaintiff, who was then 89 years old, entered the store with her husband through the garden entrance.[2] The aisle leading into the store from that entrance was six to eight feet wide, with customer and cart traffic going in both directions entering and exiting the store. Shopping carts were stored near the entry, further narrowing the usable aisle way. Pedestrian and cart traffic that day was heavy.

Charles Niver was employed by Wal-Mart as a "greeter." Niver's primary functions were "greeting people, helping people, and security." Niver received periodic performance reviews and, on one occasion, had been informed that he "needed to be more aware of what goes on behind you."

As the Shoups entered the store, they saw Niver standing in the aisle, talking with another customer. Plaintiff attempted to get past Niver by going between him and the row of shopping carts—a space approximately three feet

---

[1] *See Mauri v. Smith*, 324 Or 476, 479, 929 P2d 307 (1996).

[2] The North Salem Wal-Mart store provides special parking spaces for senior citizens.

wide. As plaintiff attempted to pass behind him, Niver stepped back suddenly, striking plaintiff in the face with his elbow and knocking her to the ground. Plaintiff was rendered momentarily unconscious by the fall, suffered extensive bruising and soft-tissue injuries, and was taken to the hospital thereafter.

Plaintiff brought this action, alleging two alternative claims for relief. First, she alleged that Wal-Mart was *directly* liable on a variety of grounds. At the core of this appeal is paragraph 5(b) of the complaint, in which plaintiff alleged that Wal-Mart was negligent in:

> "Instructing or requiring persons in the position of greeter to stand and remain in the customer pathway thereby creating an obstacle to customers entering its stores."

Second, plaintiff alleged that Wal-Mart was *vicariously* liable for the negligence of its employee, Niver:

> "6(a) In failing to use reasonable care when proceeding through the store where he knew or should have known customers would be constantly entering the store, and would be present in his pathway
>
> "(b) In failing to keep a proper lookout when moving through aisles where customers were located, and
>
> "(c) In failing to keep reasonable control of his body by turning so abruptly as to constitute a danger to others nearby where he knew or should have known customers were entering the store."

At trial, after both parties had rested, defendant moved "to dismiss or strike" the disputed direct liability specification contained in paragraph 5(b), arguing that "merely by having a greeter or an employee positioned near the entrance of the store cannot, in and of itself, as a matter of law, be negligent." The trial court denied that motion.[3]

Thereafter, during preclosing argument colloquy on jury instructions, plaintiff offered a special verdict form that

---

[3] Defendant also successfully moved for a partial directed verdict against plaintiff's other specifications of direct negligence, as well as against paragraph 6(c) pertaining to vicarious liability. Plaintiff does not cross-assign error to those rulings.

sought to distinguish between the direct liability and vicarious liability claims. Defendant, who had submitted a general verdict form, objected to plaintiff's proposed form, and in response—and before the court ruled on defendant's objections or on the general propriety of the proposed form—plaintiff withdrew the proposed special verdict form.[4] The jury subsequently returned a verdict for plaintiff, awarding economic damages of $2,099 and noneconomic damages of $25,000.

■ On appeal, defendant raises two interrelated assignments of error: (1) The trial court erred in denying defendant's motion for a directed verdict against paragraph 5(b) in that there was no evidence to support the allegation that defendant had, in fact, directed Niver to stand and remain in a position creating an obstacle to customers. (2) The court erred in denying defendant's motion to strike or dismiss paragraph 5(b) in that the facts alleged there do not state a claim for negligence under Oregon law. Defendant further contends that, because the jury returned a general verdict, under the "we can't tell rule" the submission of the flawed direct liability specification requires a new trial. *See Whinston*, 309 Or at 359.

Plaintiff counters that defendant, by its objections to the proposed special verdict form, forewent any ability to invoke the "we can't tell" principle on appeal. That is, plaintiff reasons that, but for defendant's objections, the jury would have responded to the special verdict form and "we would be able to tell" the basis of the verdict. Plaintiff further asserts that, in all events, as buttressed by the proof adduced at trial, paragraph 5(b) was legally and factually sufficient.

Thus, the appeal turns on two issues. First, should the direct liability specification, paragraph 5(b), have been submitted to the jury? Second, even if not, in these circumstances is defendant entitled to the benefit of the "we can't tell" principle? We address each issue in turn.

---

[4] Defendant's objections and the consequences of the use of a general verdict form in this case are discussed at length below, in our consideration of the "we can't tell" issue. 171 Or App at 364-74.

■ ■ When a defendant assigns error to the denial of a motion challenging the sufficiency of the pleadings at the conclusion of trial on the merits, we "consider the whole record, including evidence introduced by the defendant, to determine whether the plaintiff presented a *prima facie* case." *Scholes v. Sipco Services & Marine, Inc.*, 103 Or App 503, 506, 798 P2d 694 (1990). We view the evidence in the light most favorable to the nonmoving party, extending to that party the benefit of all reasonable inferences that may be drawn from the evidence. *Faverty v. McDonald's Restaurants of Oregon, Inc.*, 133 Or App 514, 521, 892 P2d 703 (1995), *rev dismissed* 326 Or 530 (1998) (applying that standard to review of denials of motions for directed verdict and to dismiss following trial on the merits). We conclude that, even as amplified by the evidence presented at trial, plaintiff's direct liability claim against Wal-Mart was insufficient as a matter of law.

■ ■ On appeal, as before the trial court, the parties both characterize plaintiff's direct liability claim, and particularly specification 5(b), as sounding in premises liability.[5] *Wollston v. Wells*, 297 Or 548, 557-58, 687 P2d 144 (1984), describes the law of premises liability as it applies to the duty of a storekeeper to their customers:

> "In general, it is the duty of the possessor of land to make the premises reasonably safe for the invitee's visit. The possessor must exercise [due care] to discover conditions of the premises that create an unreasonable risk of harm to the invitee. The possessor must exercise that standard of care either to eliminate the condition creating that risk or warn any foreseeable invitee of the risk so as to enable the invitee to avoid the harm."

*See also Andrews v. R.W. Hays Co.*, 166 Or App 494, 502-03, 998 P2d 774 (2000); *Jensen v. Kacy's Markets, Inc.*, 91 Or App 285, 288, 754 P2d 624 (1988) (both applying standard). A condition presents an unreasonable risk of harm if "it cannot be encountered with reasonable safety, even if the danger is known and appreciated." *Jensen*, 91 Or App at 289.

---

[5] Plaintiff has never contended, for example, that Wal-Mart was directly liable on a claim that it negligently hired or retained Niver.

Defendant contends that the risk of harm arising from the positioning of a greeter in a busy and congested entry of a retail store is not unreasonable because the greeter can still be approached safely, even when stationed in a congested and busy environment:

> "Being a person, the greeter is not an unreasonably dangerous condition found at the store, such as a foreign substance on the floor or a concealed hole. He is not an inanimate object. * * * The plaintiff would know and understand, as any reasonable person would, that a person with the inherent mobility of his legs can stand in one place, step forward, back, to either side, or begin walking from a standstill at any moment. There is therefore a zone around a person which could be occupied or invaded by his or her movements at any moment. It should be expected that a reasonable person would appreciate this zone whenever encountering another person in a store, on a sidewalk, or anywhere for that matter. Therefore, the greeter, a person, can be encountered with reasonable safety where his presence is known and appreciated by a reasonable person in the position of the plaintiff."

Thus, defendant's argument, as we understand it, is that even viewing the evidence most favorably to plaintiff, any harm suffered in this case arose not from Niver's mere *presence* in the entryway, but from his *volitional act* of turning and stepping back into plaintiff. That is, plaintiff's injury was caused not by any "human obstruction" in the aisle, but by Niver's independent movement.

We agree that the risk of harm that plaintiff encountered here arose from Niver's *conduct* and not from the *condition* of his mere presence in a busy and congested entry. Most simply, the irreducible essence of plaintiff's complaint is that plaintiff was hurt because Niver *moved* without looking.[6] This is not a case in which plaintiff was injured when she ran into Niver after he had been directed to stand immobile, like a sentient pillar, in the middle of a busy aisle. Nor was this a case in which the condition of Niver's static presence forced plaintiff into the dangerous path of onrushing

---

[6] Indeed, it is that conduct that is the basis of plaintiff's second, vicarious liability claim.

traffic. Rather, the asserted risk arose—and plaintiff's injuries allegedly occurred—precisely because human beings are animate, mobile, and occasionally careless.

We thus agree with defendant that, in this case, the greeter's mere presence in a crowded and busy entryway did not, in itself, create an unreasonable risk of harm of the sort giving rise to premises liability. *Schnell v. Goodwill Industries,* 253 Or 100, 102, 451 P2d 484 (1969), is illustrative. There, the trial court refused to withdraw a specification that the defendant store owner had been negligent in "unloading rugs in that portion of said store normally occupied by customers during business hours." *Id.* at 102. The Supreme Court reversed, drawing a distinction between the act of unloading rugs, which was not "a dangerous act in itself" and the manner in which those rugs were unloaded. *Id.* at 103. The court held that while a storekeeper does have "a duty not to unload rugs negligently," there was no duty not to unload rugs at all on the retail floor:

> "The challenged specification of negligence, which treated the unloading of rugs as a dangerous act in itself, placed before the jury an erroneous theory of the defendant's duty. It is no more reasonable to argue that the defendant had a duty not to unload rugs during business hours where customers were present than it would be to argue that a grocery store has a duty not to restock its shelves during business hours." 253 Or at 103.

The same reasoning applies here. Just as a retailer does not have "a duty not to restock its shelves during business hours," *id.*, Wal-Mart does not have a duty not to position greeters on its retail floor. Although defendant's employees are obligated to perform their function in a nonnegligent manner, the fact that an employee who interacts with the public might act negligently does not give rise to a direct premises liability claim against the store owner. The trial court thus erred in submitting plaintiff's direct liability claim to the jury.

We proceed, then, to whether a remand for a new trial is required under *Whinston*'s "we can't tell" principle. *Whinston,* 309 Or at 359. Under that rule, when multiple claims or specifications are submitted to the trier of fact and

"the court cannot determine whether the verdict was based on an allegation supported by the evidence or on one unsupported by the evidence, the result is a new trial." *Id.* That principle applies equally to cases when one or more allegations submitted to a jury are determined on appeal to be insufficient as a matter of law. *See Waddill v. Anchor Hocking, Inc.,* 149 Or App 464, 479, 944 P2d 957 (1997), *rev'd on other grounds* 330 Or 376, 8 P3d 200 (2000). Given our conclusion that specification 5(b) was erroneously submitted to the jury and the jury's rendition of a general verdict, *Whinston* would seem to compel a remand for a new trial.

Plaintiff argues, however, that defendant is precluded from invoking *Whinston* because defendant opposed plaintiff's proposed special verdict form at trial. Plaintiff asserts, particularly, that defendant's response to her special verdict form constituted either invited error or a waiver of the "we can't tell" rule. Before addressing the merits of those arguments, we recount what transpired at trial.

After the trial court denied defendant's motions against plaintiff's direct liability claim, the parties submitted proposed verdict forms. Defendant's form presented the question of defendant's negligence in one generalized question:

"1. Was the Defendant negligent in at least one of the respects claimed by Plaintiff which caused damage to Plaintiff?"

Conversely, plaintiff's proposed form read, in pertinent part:

"1. Was defendant, Wal-Mart Stores, Inc., negligent in one or more of the respects claimed in plaintiff's Complaint which caused damage to the plaintiff?

"Answer: _____ (Yes or No).

"2. Was defendant's employee, Charles Niver, negligent in one or more of the respects claimed in plaintiff's Complaint which caused damage to the plaintiff?

"Answer: _____ (Yes or No)."[7]

_____

[7] Both plaintiff's and defendant's proposed forms contained additional and subsequent questions on plaintiff's comparative fault and damages that are not relevant to this appeal.

Defense counsel initially objected to plaintiff's form on the basis that it required the jury to consider the issue of defendant's negligence twice:

> "[W]e would object to using the two question[s], because I think it unfairly highlights or forces the jury to consider negligence twice, which in this case we only have one defendant; it's Wal-mart. Instructions have been given that Mr. Niver is an employee of the company and therefore his acts would be imputed to Wal-Mart, and therefore, all we need is one question, was the defendant negligent in one or more of the ways claimed? And then if yes, or no, they can move on to the next questions."[8]

The following colloquy ensued:

> "[PLAINTIFF'S COUNSEL]: If I may, your Honor, the purpose of having the two questions is really just so if there is any appeal issue as to your rulings * * * on the directed verdict motion issues * * * that we will know what the jury based their decision on * * *. We could dissect what the jury had decided, for purposes of appeal. That's really the only reason to separate them.

> "[DEFENSE COUNSEL]: Well, I don't know that that's reason to separate out items on the verdict form. And I'm trying to think if there's any cases on that. But if all of the allegations that the plaintiff make—if they're satisfied those are appropriate allegations under the law, I don't know that we need to list them out specifically on the verdict form.

> "And I think, furthermore, it creates prejudice in the way that this is set up to have the jury, in effect, considering the negligence question twice. It unfairly emphasizes that portion of the case.

> "[PLAINTIFF'S COUNSEL]: I don't actually—I feel strongly in that I—in preserving the appeal issues, but frankly, I mean, it might actually assist the defense more in the appeals issues. I am satisfied with the claims as they exist, and if there is an objection to this form it might create error, I would withdraw the request, and therefore agree to [defendant's] form.

---

[8] The parties stipulated that Niver was acting within the course and scope of his employment, and the jury was ultimately so instructed.

"THE COURT: I'll give [defendant's] form * * *."

Plaintiff points to that sequence and argues that it was defendant who requested the generalized verdict form used here; that plaintiff's proposed form would have allowed us to determine which specification of negligence was the basis of the jury's decision; and that defendant is responsible for the fact that that more detailed form was not submitted to the jury because defendant objected to the use of that form. Plaintiff thus reasons that defendant created the situation by which "we can't tell" which specification the jury relied upon and, consequently, defendant cannot now invoke *Whinston* to upset the verdict.

We reject those arguments for two related reasons. First, those arguments misapprehend the parties' respective roles *vis-à-vis* the "we can't tell" principle. Second, defense counsel's conduct before the trial court neither prospectively waived invocation of the "we can't tell" principle nor invited any erroneous judicial ruling.

We emphasize, at the outset, the singular nature of the "we can't tell" doctrine and of the functional "burdens" it implicitly assigns to litigants. Under that doctrine, as formulated in *Whinston*, a defendant[9] is entitled to a new trial if: (1) multiple specifications of negligence are submitted to the jury; (2) at least one of those specifications is legally or factually deficient; and (3) the jury returns a general verdict. The defendant is not obligated to prove that the jury's verdict was, in fact, based on that deficient specification. Rather, the defendant must only "have taken some action at trial to remove the unsupported allegation from the jury's purview." *Whinston*, 309 Or at 359.[10] Nothing more.

---

[9] The "we can't tell" rule can apply not only to submission of a plaintiff's specifications but also to submission of a defendant's affirmative defenses. *See Graham v. Brix Maritime Co.*, 160 Or App 1, 7, 979 P2d 765 (1999) (remand unnecessary for erroneous refusal to give instruction on applicable affirmative defense when special verdict form disclosed that jury found defendant was not negligent and thus did not reach issue of affirmative defenses). However, to simplify, we phrase the following discussion in imprecise terms, referring to "plaintiff" and "defendant" generically in their *usual* posture in such cases.

[10] A motion for directed verdict against a party's *entire* case is inadequate, however, because, as the court noted in *Whinston*, such a motion "is properly denied if *any* allegation is supported by the evidence." 309 Or at 360 (emphasis in original).

 Conversely, a plaintiff can avoid the doctrine by per-suading the trial court to undertake measures that permit the reviewing court to determine whether the jury's verdict was based on a sufficient specification—*i.e.*, that the errone-ous denial of the directed verdict motion and the submission of the flawed specification was truly harmless error. As the court explained in *Whinston*:

> "In the future, a careful practitioner may wish to guard against an untoward outcome * * *. Through the use of a special verdict, or by the use of a general verdict accompa-nied by answers to interrogatories, the trial and appellate courts would be able to determine if the jury verdict were based on an allegation supported by the evidence." 309 Or at 359 n 10 (citations omitted).

*See, e.g., Graham,* 160 Or App at 3, 7. Thus, under *Whinston,* once the defendant/appellant demonstrates error, the plain-tiff/respondent bears the burden of demonstrating that the error was harmless. If there is a general verdict, without refinement or amplification, the plaintiff cannot sustain that burden. Consequently, it is incumbent upon a plaintiff at trial to take the steps necessary to ensure that a reviewing court can determine whether error was, in fact, harmless.

Here, plaintiff failed in that burden. Although plain-tiff's counsel initially tendered the special verdict form, heed-ing *Whinston*'s advice for the "careful practitioner," 309 Or at 359 n 10, plaintiff's counsel then withdrew the special verdict form in the face of defense counsel's opposition. Conse-quently, we can't tell whether the erroneous submission of

---

Thus, to preserve the error, a motion for directed verdict must be directed against the specific allegations challenged as insufficient.

In addition, *Whinston*'s prescribed remedy of a new trial is waived when a defendant, after raising the issue of the insufficiency of allegations at trial, makes a post-judgment motion for judgment notwithstanding the verdict (*j.n.o.v.*) without joining with that motion an alternative motion for a new trial. ORCP 63 C; *Goodyear Tire & Rubber Co. v. Tualatin Tire & Auto,* 325 Or 46, 932 P2d 1141 (1997). That "join-it-or-lose-it" requirement, *id.* at 51, is not implicated here, how-ever, because Wal-Mart never moved for *j.n.o.v. See id.* at 53 (new trial proper on issues not assigned as error in motion for *j.n.o.v.*).

paragraph 5(b) to the jury was harmless. The issue thus narrows to whether defendant's opposition to the proposed special verdict form somehow excuses or relieves plaintiff of the burden of proving the harmlessness of the error.

 Plaintiff first styles defendant's opposition as embodying a species of "invited error." That argument fails because the "invited error" principle necessarily assumes that there was a ruling by the trial court. Without a ruling, there can be no error. *See, e.g., Kentner v. Gulf Ins. Co.*, 298 Or 69, 73, 689 P2d 955 (1984) (trial court's admission of evidence is not reversible when party assigning error introduced the evidence in question at trial). Here, there was no ruling as to the propriety of a special verdict because plaintiff withdrew her proposed form before the court made any ruling.

██ ██ Nor can the trial court's submission of the general verdict form to the jury be cast as the operative "ruling" for "invited error" purposes. Even assuming that plaintiff might have been entitled, upon request, to have an appropriate special verdict form submitted to the jury, *see Whinston*, 309 Or at 359 n 10, once plaintiff withdrew her proposed verdict form and explicitly acquiesced in the submission of defendant's form, the court did not, and could not, err in submitting the general form to the jury. "Invited error" is inapposite.[11]

 We proceed, then, to waiver. Waiver is the "voluntary relinquishment of a known right." *Alderman v. Davidson*, 326 Or 508, 513, 954 P2d 779 (1998). In *Waterway Terminals Co. v. P. S. Lord Mechanical Contractors*, 242 Or 1, 406 P2d 556 (1965), the court described the rigorous requisites of a waiver of a legal right:

---

[11] A further anomaly is that, ordinarily, the "invited error" doctrine applies when an appellant assigns error to a ruling of the trial court that the appellant was itself "actively instrumental in bringing * * * about." *Anderson v. Oregon Railroad Co.*, 45 Or 211, 216-17, 77 P 119 (1904). Here, of course, defendant, as appellant, does not assign error to the submission of the general verdict. Rather, plaintiff, as respondent, argues that defendant's opposition to the special verdict form should preclude application of the "we can't tell" rule. Conversely, to the extent that there could be any arguable "error" in submitting the general verdict form to the jury, *plaintiff* invited that "error" by expressly acquiescing in that form. *See* 171 Or App at 366.

"In the absence of an express agreement a waiver will not be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless by his conduct the opposite party has been misled, to his prejudice, into the honest belief that such waiver was intended or consented to. To make out a case of waiver of a legal right there must be a *clear, unequivocal, and decisive* act of the party showing such a purpose or acts amounting to an estoppel on his part." *Id.* at 26 (emphasis added; citations omitted).

As noted, 171 Or App at 367-69, the "we can't tell" rule operates to place the burden of proving *harmlessness* of error on a prevailing plaintiff. Consequently, plaintiff's argument, as we understand it, is that defendant, through its counsel's remarks in opposing the special verdict form, disavowed or forwent the benefit of that burden-allocating principle. That, in turn, would effectively impose on defendant the burden of proving the *harmfulness* of submitting the flawed specification to the jury. That shift in "burdens," coupled with the general verdict, would, in turn, compel affirmance.

The question is whether defense counsel's remarks in opposing the special verdict form either evinced or effectuated such a "waiver." That is, did counsel's remarks constitute a "clear, unequivocal, and decisive" disavowal of *Whinston*'s burden-allocating benefits or so mislead opposing counsel as to estop defendant from enjoying *Whinston*'s benefit on appeal? *See Waterway Terminals*, 242 Or at 26.

Defense counsel's comments concerning the special verdict form fell into three categories:

(1) The proposed form was defective in that it unfairly "highlighted" the issue of negligence and presented the claims in confusing fashion;[12]

---

[12]

"* * * [W]e would object to using the two question[s], because I think it unfairly highlights or forces the jury to consider negligence twice, which in this case we only have one defendant; it's Wal-Mart. Instructions have been given that Mr. Niver is an employee of the company and therefore his acts would be imputed to Wal-Mart, and therefore, all we need is one question, was the defendant negligent in one or more of the ways claimed? And then if yes, or no, they can move on to the next questions.

"* * * * *

(2) Avoiding a potential "we can't tell" problem on appellate review might not be a sufficient reason to use a special verdict form;[13] and

(3) In all events, if all the submitted specifications were, in fact, legally and factually sufficient, there was no need for the special verdict form.[14]

The first and third responses are most easily disposed of. An objection to a special verdict form as being erroneously or confusingly drafted speaks solely to the content of the form itself. Defense counsel's objection in that regard implicitly assumed that an appropriate special verdict form *could* be submitted to the jury and merely asserted that this form was flawed. Nothing more.

Defense counsel's third response, was, essentially a "Put up or shut up" or "If you had the 'courage of your convictions'" response. That is, *if* the negligence specification in paragraph 5(b) truly was legally and factually sufficient, there was no need for a special verdict. That statement was true, albeit tautological. It is also true that plaintiff's counsel's proper response should have been "So what?" That is, given plaintiff's burden of proving harmlessness, plaintiff, as a precautionary matter, still needed a special verdict. Instead, plaintiff's counsel responded:

"I don't actually — I feel strongly in that I — in preserving the appeal issues, but frankly, I mean, it might actually assist the defense more in the appeals issues. *I am satisfied with the claims as they exist*, and if there is an objection to this form it might create error, *I would withdraw the request, and therefore agree to [defendant's] form.*" (Emphasis added.)

The more difficult question is whether defense counsel's second response, either by itself or in conjunction with

<hr>

"It creates prejudice in the way that this is set up to have the jury, in effect, considering the negligence question twice. It unfairly emphasizes that portion of the case."

[13] "Well, I don't know that that's reason to separate items on the verdict form. And I'm trying to think if there's any cases on that."

[14] "But if all the allegations that the plaintiff makes—if they're satisfied those are appropriate allegations under the law, I don't know that we need to list them out specifically on the verdict form."

counsel's other remarks, evinced or effected a waiver. To again place that matter in context, after defense counsel initially objected to the proposed special verdict form, plaintiff's counsel responded:

> "[T]he purpose of having the two questions is really just so if there is any appeal issue as to your rulings as to eliminating or not eliminating on the directed verdict motion issues, certain allegations as they were set forth, that we will know what the jury based their decision on, what portion of the— what allegation, as to whether it therefore would be or wouldn't be an appeal issue. We could dissect what the jury had decided, for purposes of appeal. That's really the only reason to separate them."

Defense counsel then replied:

> "Well, I don't know that that's reason to separate out items on the verdict form. And I'm trying to think if there's any cases on that."[15]

One could understand defense counsel's response literally— *i.e.*, that counsel really didn't know if case law compelled the giving of a special verdict in a potential "we can't tell" situation. One could also view that response as at least implying that a special verdict was unnecessary to obviate the potential "we can't tell" problem. The former would be consistent with the sort of "thinking out loud" that often occurs in colloquy, particularly concerning novel or unanticipated matters; the latter would smack of the sort of disingenuous "mouse-trapping" that could, in turn, preclude defendant from taking an inconsistent position on appeal.

We conclude that those remarks did not waive future reliance on the "we can't tell" principle for three reasons. *First*, a review of the entire colloquy between court and counsel does not support a "mouse-trapping" or "sand-bagging" characterization. Rather, defense counsel's primary and repeated objection to the special verdict form pertained to its form and content. The reference to whether there was sufficient "reason to separate out items on the verdict form" was brief, incidental to defendant's principal concern, and

---

[15] Although both counsel were generally aware of the "we can't tell" issue, neither referred to *Whinston,* much less to footnote 10 of that opinion, which addressed appropriate "fixes" for potential "we can't tell" problems.

expressed in a qualified, almost musing manner: "I don't know * * * *. And I'm trying to think if there's any cases on that." Those remarks were hardly "clear, unequivocal, and decisive." *Waterway Terminals*, 242 Or at 26.

*Second,* any ambiguity in defense counsel's remarks does not assist plaintiff. As we have emphasized, under *Whinston* the prevailing *plaintiff* bears the burden of developing a record (most often through a special verdict) sufficient to establish the harmlessness of the error of submitting a defective specification to the jury. That is the *plaintiff's* obligation; the defendant need not do anything. Thus, if there is any uncertainty as to whether a defendant will invoke *Whinston* on appeal, it is incumbent upon the plaintiff to ensure that the record is sufficiently "clean" to support an affirmance.

*Third,* in this case, plaintiff's counsel's own remarks demonstrate that counsel was not "mouse-trapped" by any suggestion, however ambiguous, that a special verdict was not necessary to address plaintiff's obligations under the "we can't tell" rule. Before withdrawing the proposed special verdict form, plaintiff's counsel expressed the view—irreconcilable with *Whinston's* allocation of proof—that such a verdict "might actually assist *the defense* more in the appeals issues." (Emphasis added.) Counsel proceeded to express "satisf[action] with the claims as they exist" and then concluded that, because "if there is an objection to this form it might create error," plaintiff was withdrawing her request for a special verdict. Thus, plaintiff did not withdraw the special verdict because counsel had been misled into believing that it was unnecessary under *Whinston*—indeed, she thought it would "actually assist the defense more." The decision to withdraw resulted from concerns that "if there is any objection to this form"—*i.e.,* defendant's objection to the design and content of the proposed verdict form—that "might create error." In short, plaintiff chose to withdraw the requested form, without seeking to revise that form or to obtain a ruling on its propriety, to forestall an appellate challenge to the content of that form. There was no "waiver" by defendant.

In summary, we conclude that the trial court erroneously submitted plaintiff's direct negligence specification,

paragraph 5(b), to the jury. We further conclude that defendant was not precluded from invoking *Whinston*'s "we can't tell" principle. Because we cannot determine whether the jury's verdict was based on the erroneously submitted specification, we must reverse and remand for a new trial.

Reversed and remanded for a new trial.