Argued and submitted May 10, Southridge High School, Beaverton; reversed and remanded October 25, 2016; petitions for review denied March 30, 2017 (361 Or 311)

Tricia AULT,
*Plaintiff-Appellant,*

*v.*

DEL VAR PROPERTIES, LLC;
and Eagle Point Mini Storage, LLC,
*Defendants-Respondents.*

Jackson County Circuit Court
13CV06855; A158432

383 P3d 867

Tim Williams argued the cause for appellant. With him on the briefs was Kathryn H. Clarke.

Scott Mahady argued the cause and filed the brief for respondent Del Var Properties, LLC.

Alicia M. Wilson argued the cause for respondent Eagle Point Mini Storage, LLC. On the brief were Bernard S. Moore and Frohnmayer, Deatherage, Jamieson, Moore, Armosino & McGovern, P.C.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and DeHoog, Judge.

## DEHOOG, J.

Plaintiff brought this negligence claim against defendants Del Var Properties, LLC, and Eagle Point Mini Storage, LLC, seeking damages for injuries sustained when she tripped over the edge of a sidewalk in front of defendants' office building. She appeals from the judgment dismissing the claim after the trial court granted defendants' motion for summary judgment and contends that the court granted the motion based on the mistaken conclusion that plaintiff was required to establish that the sidewalk edge was an "unreasonably dangerous condition." Plaintiff contends that her claim does not depend on the existence of an unreasonably dangerous condition and, further, that she presented sufficient evidence to withstand summary judgment. We agree with plaintiff that the trial court committed legal error in granting defendants' summary judgment motion, and we therefore reverse and remand the judgment. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997).

We summarize the facts in the light most favorable to plaintiff, the party opposing the motion for summary judgment. *Jones*, 325 Or at 420. Defendant Eagle Point operates a storage facility and business office in a single-story building owned by defendant Del Var Properties. A light gray concrete sidewalk runs the length of the front of the building and separates the building from an asphalt parking lot. The sidewalk pavement is generally flush with the parking lot, except for a section directly in front of Eagle Point's office door, where the pavement is approximately one to two inches above the level of the parking lot.

Plaintiff rented storage space from Eagle Point. Late one February afternoon, plaintiff went to Eagle Point's office to deposit a rental payment in a drop box to the left of the office door. She parked her car in the parking lot, in an area where the sidewalk pavement and the asphalt were even. As she walked from her parked car to the drop box, she fell and sustained injuries when she tripped on the raised edge of the sidewalk directly in front of the office door.

In her amended complaint, plaintiff alleged a negligence claim for damages based on a theory of premises liability:

> "At all material times, Defendants knew or should have known that the misalignment existed in the area where [plaintiff] fell.
>
> "* * * * *
>
> "At all material times, the danger created by the misalignment was latent, thereby constituting an unreasonable risk of harm to others, including [plaintiff], and further constituting an unreasonably. dangerous condition that could not be encountered with a reasonable degree of safety by persons similarly [situated] to [plaintiff]."

The complaint further alleged that defendants were negligent in causing or allowing the "misalignment" of the sidewalk and the asphalt in an area where customers would walk; in failing to discover the misalignment; in failing to repair or replace the misalignment; in failing to place signs or barriers to prevent customers from encountering the misalignment; and in failing to warn customers or otherwise make known the misalignment.

Plaintiff testified by deposition that she had been to Eagle Point's office on other occasions but had never noticed the raised edge or tripped. She testified that she was wearing flip-flops on the day of the accident but that they did not cause her to trip. She testified that the area was dry and that neither the lighting nor the weather had contributed to her fall. She testified that she did not recall where she had been looking at the time of the fall, but that, if she had noticed that the sidewalk pavement was higher, she could have stepped over the edge.

The summary judgment record included photographs of the front of the building. The photographs showed the sidewalk pavement and signage on the door of the Eagle Point office and on the drop box to the left of the door. The photographs also showed items arranged on the sidewalk and against the wall in front of the Eagle Point office. To the right of the door were a vending machine, a portable traffic light, a hose, and a metal container. To the left of the

door were a statue of an eagle, a picnic table and benches, a large garden swing, several potted plants, and a vending machine. There was an awning along the length of the Eagle Point office with a set of wind chimes, and two American flags were displayed along the wall.

In their memoranda in support of their motion for summary judgment, defendants contended that the evidence in the record was insufficient as a matter of law to support a claim of negligence based on a theory of premises liability, because plaintiff could not establish the existence of either an "unreasonable risk of harm" or an "unreasonably dangerous condition." Citing this court's opinions in *Glorioso v. Ness*, 191 Or App 637, 644, 83 P3d 914, *rev den*, 336 Or 657 (2004); *Andrews v. R. W. Hays Co.*, 166 Or App 494, 503, 998 P2d 774 (2000); and *Jensen v. Kacy's Markets, Inc.*, 91 Or App 285, 289, 754 P2d 624, *rev den*, 306 Or 413 (1988), defendants further argued that, "[a]bsent an 'unreasonably dangerous condition,' a possessor is not liable for the injuries sustained by invitees on his premises."[1] In light of plaintiff's testimony that she had previously encountered the sidewalk edge without tripping and that she could have stepped over it had she seen it, defendants contended that the evidence could not support a finding that the raised edge was unreasonably dangerous.

In response, plaintiff argued that there was evidence from which a jury could find that, under the circumstances, the raised pavement edge was an unreasonably dangerous condition. Plaintiff separately contended that, contrary to defendants' view, it was not necessary to establish an unreasonably dangerous condition in order to prevail on a claim of negligence based on premises liability. In plaintiff's view, a property owner or occupier can be liable for failing to protect an invitee from an unreasonable risk of harm that does not constitute an unreasonably dangerous condition. Plaintiff further contended that there was evidence from which a jury could find that the raised pavement

---

[1] An "unreasonably dangerous condition" has been defined in the case law as "a condition which cannot be encountered with reasonable safety even if the danger is known and appreciated." *Wilk v. Georges*, 267 Or 19, 26, 514 P2d 877 (1973).

edge was a latent defect that posed an unreasonable risk of harm to invitees giving rise to a duty to warn, and that defendants breached that duty. Plaintiff also advised the court that she had retained an expert witness who would testify to admissible facts and opinions that would create a question of fact precluding summary judgment. ORCP 47 E.

The trial court granted defendants' motion for summary judgment, concluding that

> "the Summary Judgment record, as a matter of law, does not establish an unreasonably dangerous condition (*i.e.*, no evidence of a slippery surface, poor lighting, prior accidents or a store front that, in fact, created a distraction to Plaintiff), nor is [this] a case in which ORCP 47 E applies[.]"

Plaintiff assigns error to the trial court's ruling granting defendants' motion for summary judgment. The resolution of the issues on appeal requires us to interpret this court's and the Supreme Court's case law relating to premises liability. On appeal, the parties agree that plaintiff was defendants' business invitee[2] and that, because of the special relationship between possessors of land and their business invitees, negligence claims by an invitee based on premises liability fall into the category of cases that the Supreme Court has said "invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty." *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987); *see also Garrison v. Deschutes County*, 334 Or 264, 272, 48 P3d 807 (2002) (business invitee rule is a "special duty"). The parties also agree that, as a possessor of land, defendants' duty to plaintiff was to maintain the premises in a reasonably safe condition in order to protect plaintiff from conditions that created an unreasonable risk of harm and to exercise that duty by either eliminating any such condition or warning of the risk to enable the invitee to avoid the harm. *Hagler v. Coastal Farm Holdings, Inc.*, 354 Or 132, 140-41, 309 P3d 1073 (2013); *Woolston v. Wells*, 297 Or 548, 557-58, 687 P2d

---

[2] "'A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.'" *Taylor v. Baker*, 279 Or 139, 146, 566 P2d 884 (1977) (quoting *Restatement (Second) of Torts* § 332(3) (1965)).

144 (1984); *see also Cassidy v. Bonham*, 196 Or App 481, 486, 102 P3d 748 (2004) (the possessor's duty to an invitee is to "warn of latent dangers" and to "protect the invitee against dangers in the condition of the premises about which the [possessor] knows or should reasonably have known").[3]

But, as before the trial court, the parties disagree as to when circumstances give rise to a possessor's duty to an invitee. Defendants' view, with which the trial court agreed, is that our case law defines an unreasonable risk of harm as an "unreasonably dangerous condition." Therefore, defendants contend, a duty to warn or otherwise protect an invitee arises only when there is an unreasonably dangerous condition on the premises, and, to establish liability for a failure to protect an invitee from harm, a plaintiff must put on proof of an "unreasonably dangerous condition." In this case, defendants argue, the trial court correctly determined that plaintiff had failed to produce evidence of an unreasonably dangerous condition.

In plaintiff's view, the presence or absence of an unreasonably dangerous condition does not define the limits of a possessor's duty to an invitee and, although an unreasonably dangerous condition is a type of unreasonable risk of harm (and one that gives rise to a higher standard of care), it is not wholly commensurate with "unreasonable risk of harm." Plaintiff contends that a condition that is not unreasonably dangerous can nonetheless create an unreasonable risk of harm and give rise to liability, and that the record on summary judgment creates a genuine issue of material fact as to whether, under the circumstances, the uneven pavement created an unreasonable risk of harm.

Thus, the issue on appeal is whether an invitee seeking to establish premises liability invariably must produce

---

[3] In *Woolston*, the court said:

"In general it is the duty of the possessor of land to make the premises reasonably safe for the invitee's visit. The possessor must exercise the standard of care above stated to discover conditions of the premises that create an unreasonable risk of harm to the invitee. The possessor must exercise that standard of care either to eliminate the condition creating that risk or to warn any foreseeable invitee of the risk so as to enable the invitee to avoid the harm."

297 Or at 558.

evidence of an unreasonably dangerous condition in order to establish an unreasonable risk of harm. Our review of the cases persuades us that an "unreasonable risk of harm" is not defined as an unreasonably dangerous condition, and that the establishment of premises liability does not necessarily depend on the existence of an unreasonably dangerous condition.

As we recently said in *Moorehead v. TriMet*, 273 Or App 54, 68, 359 P3d 314 (2015), *rev den*, 358 Or 550 (2016), despite various theories of premises liability,

> "[t]he overarching principle [in the law of premises liability] *** is that the owner owes a duty to invitees to keep its premises *** in a reasonably safe condition. Thus, in the context of the condition of its premises, the owner is obligated to take reasonable action to protect the invitee against unreasonable risks of harm."

Although that "overarching principle" remains constant, how the possessor's duty must be discharged—*i.e.*, what action must be taken to protect an invitee from an unreasonable risk of harm—will depend on the circumstances, including the nature of the risk, the possessor's knowledge, and the arrangement or use of the premises. *See Michel v. Haines Enterprise, Inc.*, 240 Or 369, 372, 400 P2d 518 (1965) (owner must "take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use of the premises"). The parties' dispute concerns only the nature of the risk.

Historically, the principles of premises liability developed in the context of risks that were concealed, latent, or otherwise unknown to the invitee. Thus, before the statutory abrogation of the concepts of contributory negligence and assumption of risk,[4] a governing principle was that "in

---

[4] In 1971, the legislature enacted *former* ORS 18.470 (1971), *renumbered as* ORS 31.600 (2003), which provided:

"(1) Contributory negligence shall not bar recovery in an action by any person or the legal representative of the person to recover damages for death or injury to person or property if the fault attributable to the claimant was not greater than the combined fault of all persons specified in subsection (2) of this section, but any damages allowed shall be diminished in the proportion to the percentage of fault attributable to the claimant. This section is not intended to create or abolish any defense.

the usual case there is no obligation to protect the invitee from dangers known to the invitee because it is expected that the visitor will protect himself." *Wilk v. Georges*, 267 Or 19, 25, 514 P2d 877 (1973) (citing Dean Prosser, *Torts* § 61, 394-95 (4th ed 1971). But in *Dawson v. Payless for Drugs*, 248 Or 334, 340, 433 P2d 1019 (1967), while acknowledging the general principle, the Supreme Court recognized an exception for certain risks that, "even if known and appreciated," "cannot be encountered with reasonable safety." (Internal quotation marks omitted.) For such risks, the court reasoned, the invitee's knowledge did not relieve the possessor of the duty of reasonable care. "This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm." *Id.* at 338 (citing *Restatement (Second) of Torts* § 343 comment f (1965)). In *Dawson*, the court noted that its holding required it to overrule several cases in which it had held that a possessor owes an invitee no duty if the invitee has knowledge of the encountered danger. *Id.* at 339. Thus, even before the statutory abrogation of the doctrines of contributory negligence and assumption of risk, *Dawson* recognized that there were certain risks that, even if known and appreciated by the invitee, could give rise to premises liability. But the court also stated:

> "The rule we now adopt does not, however, call for any modification of those cases in which we have held that the possessor of land is not liable to an invitee unless the possessor causes the dangerous condition or knows or by the exercise of reasonable care could discover the danger.

---

"(2) The trier of fact shall compare the fault of the claimant with the fault of any party against whom recovery is sought, the fault of third party defendants who are liable in tort to the claimant, and the fault of any person with whom the claimant has settled. The failure of a claimant to make a direct claim against a third party defendant does not affect the requirement that the fault of the third party defendant be considered by the trier of fact under this subsection."

In 1975, the legislature enacted *former* ORS 18.475 (1975), *renumbered as* ORS 31.620(2) (2003), abolishing the doctrine of implied assumption of risk: "The doctrine of implied assumption of the risk is abolished."

"Nor does our present holding go so far as to impose a duty upon the possessor in every case in which he has knowledge of a condition of danger upon his business premises. The duty arises only when the condition is *unreasonably* dangerous."

*Id.* at 340 (emphasis in original; footnote omitted).

The last quoted paragraph would appear to provide support for the view, expressed here by defendants, that an unreasonable risk of harm is equated with an unreasonably dangerous condition, and that *only* an unreasonably dangerous condition can give rise to premises liability. But a close reading of *Dawson* shows that that is not what the court intended. Rather, as the court's emphasis of the word "unreasonably" suggests, when an invitee knows of the risk, the possessor's duty is limited to protecting the invitee from a risk that remains unreasonable despite the invitee's knowledge. Thus, the court's opinion reflects a rejection of the categorical rule of the *Restatement* that an invitee's knowledge of a dangerous condition inevitably bars recovery, and an *expansion* of potential liability for risks *known* to the invitee that result from an unreasonably dangerous condition. 248 Or at 337.

As the court's subsequent opinion in *Wilk* bears out, *Dawson* cannot be read as limiting a possessor's liability to risks caused by conditions that are unreasonably dangerous. In *Wilk*, the court addressed *Dawson* in the context of a possessor's duty to an invitee for risks known to the invitee. The court recognized that, typically, a possessor's duty to protect a business invitee from an unreasonable risk of harm will be satisfied by a warning, because a warning will make the risk known to the invitee. 267 Or at 23-26. But, the court explained, when the premises present an "unreasonably dangerous condition," *i.e.*, "a condition which cannot be encountered with reasonable safety even if the danger is known and appreciated," the means of fulfilling the duty is heightened and will include taking "reasonable and feasible steps to obviate the danger." *Id.* at 26. Thus, as *Wilk* elaborated, although a possessor's duty to protect an invitee from an unreasonable risk of harm will generally be satisfied by a warning, the presence of an unreasonably

dangerous condition could necessitate *more* than a warning to fulfill the possessor's duty to keep the premises reasonably safe and to protect an invitee from an unreasonable risk of harm, even when the risk is known and appreciated.

We note that both *Dawson* and *Wilk* were decided before the enactment of *former* ORS 18.470 (1971) and *former* ORS 18.475 (1975), abolishing contributory negligence and the implied assumption of risk, and before the Supreme Court's opinion in *Woolston*, disapproving of jury instructions that based the possessor's liability on the invitee's knowledge because they frustrated the purpose of a system of comparative fault. *Woolston*, 297 Or at 556. And *Woolston* implicitly overrules *Dawson* to the extent that *Dawson* relied on *Restatement* provisions that likewise define a possessor's liability from the standpoint of the invitee's knowledge. *Id.* at 553. But, even after *Woolston*, *Dawson* and *Wilk* remain significant in that they adopted a heightened standard of care for the narrow class of cases involving unreasonably dangerous conditions. And, despite the legislature's subsequent abrogation of contributory negligence and assumption of risk, *Dawson*'s and *Wilk*'s formulation of the heightened standard of care in that earlier context remains good law. *See Moorehead*, 273 Or App at 66-67 (citing cases); *Vandeveere-Pratt v. Portland Habilitation Center*, 242 Or App 554, 558-59, 259 P3d 9 (2011) (same). This case presents an opportunity for us to clarify that the principle expressed in those cases—that the presence of an unreasonably dangerous condition can give rise to a duty to do more than warn an invitee—does not render the possessor's liability to an invitee contingent on the presence of an unreasonably dangerous condition.

Here, plaintiff pleaded that the raised pavement edge presented *both* an unreasonable risk of harm and an unreasonably dangerous condition. The trial court concluded that the evidence in the record on summary judgment did not give rise to a genuine issue of material fact on the existence of an unreasonably dangerous condition, and we agree with that conclusion. That means that this is not a case that, categorically, subjects an owner or occupier to a *heightened* standard of care. But, as the foregoing discussion makes clear, even in the absence of an unreasonably

dangerous condition, if there was evidence sufficient to create a question of fact as to whether, in light of all the circumstances, the raised pavement presented an unreasonable risk of harm, then plaintiff was entitled to have a jury decide that question, as well as the question of what action was necessary to protect invitees from that risk. ORCP 47 C; *Jones*, 325 Or at 420 (summary judgment is appropriate only if there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law). The court therefore erred in granting defendants' motion for summary judgment based on a failure to present evidence of an unreasonably dangerous condition.

Notwithstanding the distinction we emphasize above, defendants contend that our conclusion is foreclosed by our own opinion in *Jensen*, which defendants assert equates an unreasonable risk of harm with an unreasonably dangerous condition in all instances. *Jensen* does not support defendants' broad reading. In *Jensen*, the plaintiff brought a negligence claim against the owner of a store, alleging that she was injured when an automatic door unexpectedly closed on her cane as she was entering the store. The store owner alleged that the plaintiff herself was negligent. The court first instructed the jury that the defendant had a duty to exercise reasonable care to maintain the premises in a reasonably safe condition and to use ordinary care to provide notice of any concealed danger of which the possessor had knowledge, or which, in the exercise of reasonable care, should have been discovered. The court further instructed the jury that the defendant was required to exercise reasonable care to protect invitees from conditions that were "unreasonably dangerous," and that "[a] condition is only considered unreasonably dangerous when it cannot be encountered with reasonable safety, even if the danger is known and appreciated." *Jensen*, 91 Or App at 287. We rejected the plaintiff's contention on appeal that the second instruction impliedly raised the abolished concept of assumption of risk by defining the defendant's duty in terms of the plaintiff's actions. Rather, we concluded that, in the context of the instructions as a whole, the challenged instruction merely defined "unreasonable risk of harm" as applicable in that case. *Id.* at 289. Given its procedural context and in light of *Wilk*, we

view *Jensen* as consistent with our conclusion in this case. Thus, we reject defendants' reading of *Jensen* as defining unreasonable risk of harm as an unreasonably dangerous condition for all purposes.[5] Instead, as we have explained, while an unreasonably dangerous condition can give rise to a duty to do more than warn an invitee, *Vandeveer-Pratt*, 242 Or App at 558-59, that heightened duty does not obviate the possessor's duty to make the premises reasonably safe, first, by discovering other conditions that create an unreasonable risk of harm and, second, by taking action either to eliminate the conditions or warn of the risk that reasonably should be expected to cause harm if encountered by an invitee.[6] *Woolston*, 297 Or at 557-58.

Defendants further contend that plaintiff's claim is foreclosed by our opinion in *Andrews*, in which we held that the record on summary judgment was insufficient as a matter of law to support premises liability. In that case, as here, the plaintiff was injured after tripping over an uneven pavement edge. The record disclosed

"a step-down of 1-1/2"-2" from a walkway to a parking lot, which, because of an actual or perceived similarity of color, had a 'deceptively level appearance.'"

166 Or App at 505. We concluded in *Andrews* that evidence that the uneven sidewalk edge had a "deceptively level appearance" and "[n]othing more," as a matter of law did

---

[5] In *Maas v. Willer*, 203 Or App 124, 125 P3d 87 (2005), *rev den*, 340 Or 411 (2006), which relied on *Jensen* and which defendants cite here, the alleged negligence was based on an "unreasonably dangerous condition," so we had no occasion to consider the issue presented here.

[6] Although our cases have generally adhered to that formulation, we have not always articulated the distinction. *See, e.g., Hinchman v. UC Market, LLC*, 270 Or App 561, 348 P3d 328 (2015) (as framed by plaintiff, the question was whether door posed an "unreasonable danger"); *Maas* (walkway alleged to be maintained in an "unreasonably dangerous condition"); *O'Donnell v. Floan*, 82 Or App 656, 728 P2d 956 (1986) (plaintiff's theory was that a known condition was an "unreasonably dangerous condition"); *Evans v. McNutt*, 78 Or App 627, 628, 717 P2d 251 (1986) (citing *Dawson* in context of claim involving a condition known to plaintiff); *Massey v. Coos Head Timber Co.*, 62 Or App 578, 581, 661 P2d 1374 (1983) (citing *Dawson* for standard of care that an occupier of land owes to business invitees "as to open and obvious dangers"); *Shoup v. Wal-Mart Stores, Inc.*, 171 Or App 357, 362, 15 P3d 588 (2000), *rev'd in part on other grounds*, 335 Or 164, 61 P3d 928 (2003) ("A condition presents an unreasonable risk of harm 'if it cannot be encountered with reasonable safety, even if the danger is known and appreciated.'" (Quoting *Jensen*, 91 Or App at 289.)).

not give rise to an "unreasonably dangerous condition" or the "concomitant duty to warn." *Id.* In defendants' view, the facts here are so similar to those in *Andrews* that, as in *Andrews*, we should affirm the trial court's granting of defendants' motion for summary judgment.

We conclude for two reasons that *Andrews* does not compel affirmance here. First, in *Andrews*, the court held that the record on summary judgment was not sufficient to establish an "unreasonably dangerous condition." *Id.* Here, although we reach that same conclusion with respect to the record on summary judgment, as we have explained, 281 Or App at 850-51, plaintiff's claim does not depend on proof of an unreasonably dangerous condition. Second, in *Andrews*, we cited as controlling precedent the Supreme Court's opinion in *Hamilton v. Union Oil Company et al.*, 216 Or 354, 339 P2d 440 (1959), in which the court held that a "deceptively level appearance," without more, was legally insufficient to support liability. *Andrews*, 166 Or App at 505. The record on summary judgment is different here and is not limited to a "deceptively level appearance." There is evidence in the record from which a jury could find that the uneven pavement edge was in a location where it would not be expected—indeed, that the pavement edge was *even* at other points, making the uneven edge all the more unexpected—and that there were distractions that could draw a person's eye away from the walkway. That evidence presents a genuine question of material fact for the factfinder concerning whether the uneven pavement edge presented an unreasonable risk of harm.[7] Viewing the evidence, as we must, in the light most favorable to plaintiff, we conclude that the summary judgment record presents genuine issues of material fact from which a jury could find that

---

[7] Defendants also rely on our opinion in *Glorioso*, 191 Or App at 645, in which we cited *Andrews* in support of the conclusion that the facts were "legally insufficient" to impose liability on the defendant property owners. But again, the record on summary judgment here distinguishes this case from *Glorioso*, where we said:

"A step located in a place where steps normally may be found, or with indications in the surrounding area that steps are present, with a surface of the same appearance both above and below, with no deceptive lighting, not covered with slippery substances, and with no established history of causing injury, does not pose an unreasonable risk of harm giving rise to a concomitant duty to warn."

*Id.*

the uneven pavement edge and other circumstances together created an unreasonable risk of harm to plaintiff.

In view of our disposition, we do not address plaintiff's additional contention that her proposed affidavit offered pursuant to ORCP 47 E precluded summary judgment for defendants.

Reversed and remanded.